Freddie **DUNN** et al., Plaintiffs,

v.

**NEW YORK STATE DEPARTMENT OF LABOR et al., Defendants.**

**73 Civ. 1656 (KTD).**

United States District Court,
S. D. New York.

July 13, 1979.

Diana H. Greene, National Employment Law Project, Inc., New York City, Gerald A. Norlander, Westchester Legal Services, Inc., White Plains, N. Y., for plaintiffs.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendants; A. Seth Greenwald, Asst. Atty. Gen., New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This is an action brought pursuant to 42 U.S.C. § 1983 seeking declaratory and in-

junctive relief against the State Department of Labor and its Industrial Commissioner. Plaintiffs, on behalf of themselves and all persons similarly situated,[1] argue that defendants' failure to provide prompt administrative hearings of appeals from denials of unemployment insurance benefits amounts to a violation of rights secured to them by the due process and equal protection clauses of the United States Constitution, by the Social Security Act, 42 U.S.C. § 503(a)(1) and (3), and by the Federal Standards for Appeals Promptness, 20 C.F.R. § 650 *et seq.*[2]

The unemployment compensation program is jointly operated by the federal and state governments. States administer the program pursuant to their own unemployment compensation laws but must adhere to federal guidelines in so doing. The federal government provides no substantive benefits but does pay the entire cost of administering the program provided that the state conforms to the federal requirements. 42 U.S.C. § 1101(c)(1); 42 U.S.C. § 503(a); 26 U.S.C. § 3304.

The federal requirements at issue in this case provide that state laws regarding unemployment compensation must include provision for methods of administration "reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1). Furthermore, the state must insure "Opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied." 42 U.S.C. § 503(a)(3).

The Secretary of Labor has interpreted the above statutes to require that hearings be commenced and appeals decided with "the greatest promptness administratively feasible." 20 C.F.R. § 650.1. Regulations were developed which direct states to (1) provide first level appeals with maximum promptness; (2) adopt methods of administration reasonably designed to assure such promptness; and (3) include provision in state law for (1) and (2). 20 C.F.R. § 650.-1(c) and .3(a)(1), (2). The guidelines also specify that a certain percentage of all cases must be decided within 30, 45, and 75 days of the date the appeal is filed in order to comply with federal law. 20 C.F.R. § 650.4, 650.5.

In 1972 the Department of Labor provided that any state which had not decided 50% of all first level appeals in 30 days, 75% in 45 days and 90% in 75 days, submit an immediate plan of action outlining how it would come into compliance with the federal regulations. 20 C.F.R. § 650.5; 37 Fed. Reg. 16173 (August 7, 1972). New York State was required to submit such a plan. The regulations also established a 1975 goal of 75% of all first level appeals decisions in 30 days and 85% in 45 days. *Id.* § 650.4(b); 650.5(b). 37 Fed.Reg. 16174 (August 7, 1972).

In 1976 the regulations were amended to establish the following appeals standards: 60 percent of all first level appeals decisions must be rendered within 30 days of the date of appeal; 80 percent of all first level appeals decisions must be rendered within 45 days of the appeal. 20 C.F.R. § 650.4(b).

There is no dispute that between January 1972 and March 1977 defendants had not provided hearings of appeals within the time period established by the Federal Standards for Appeals Promptness.[3] At a

---

1. Plaintiffs Freddie Dunn, Ralph Jakes and Anthony Brownlee brought this action in 1973 on behalf of themselves and a class consisting of

 All claimants of New York unemployment insurance benefits who have been or may be determined to be ineligible for such benefits by defendants, and who have requested or who may request a hearing before a referee to review such determinations, and who have not received a decision from such hearing and the unemployment insurance benefits due them. *Dunn v. New York State Department of Labor*, 60 F.R.D. 10, 11–12 (S.D.N.Y. 1973).

2. The Complaint also sought to enjoin defendants' practice of expediting employer-requested appeals but not employee-requested appeals. This practice has been discontinued and is thus no longer challenged by plaintiffs.

3. There was one exception; defendants did meet the federal guidelines for two months in 1974. Pretrial Order, ¶ D.

pretrial conference held in 1978, however, defendants argued that the case was moot since in 1977 and 1978 they had shown compliance with the Federal Standards. Plaintiffs agreed that defendants' compliance vitiated the need for a trial. Thereafter, they submitted an application for attorneys fees.

At the hearing on the amount of the award held in November 1978, defendants suddenly announced that their appeals performance had dropped below Federal Standards. In fact, statistics revealed that their performance had declined since June 1978. This was so despite defendants' representations during the pendency of the motion concerning attorneys fees that the guidelines of 20 C.F.R. § 650.4(b) continued to be met. See *Affidavit of Irving Trow*, September 12, 1978; defendants' Brief, September 25, 1978.

In view of defendants' admitted non-compliance with Federal Appeals Promptness requirements, plaintiffs have moved, pursuant to Fed.R.Civ.P. 56 for summary judgment. They contend that no issue of material fact exists since defendants have in the past complied with the Federal Standards thus demonstrating their ability to do so. According to plaintiffs, the failure to consistently adhere to these Standards has deprived them of the right to receive prompt payment of unemployment compensation.

In *California Department of Human Resources v. Java*, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), the United States Supreme Court recognized the importance of promptly providing unemployment insurance benefits to eligible claimants. Examining the requirement of the Social Security Act that State unemployment compensation programs "be reasonably calculated to insure full payment of unemployment compensation when due", 42 U.S.C. § 503(a)(1), the Court concluded that

> "when due" was intended to mean at the earliest stage of unemployment that such payments were administratively feasible after giving both the worker and the employer an opportunity to be heard. The purpose of the Act was to give

prompt if only partial replacement of wages to the unemployed, to enable workers "to tide themselves over, until they get back to their old work or find other employment, without having to resort to relief." Unemployment benefits provide cash to a newly unemployed worker "at a time when otherwise he would have nothing to spend," serving to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity.

402 U.S. at 131–32, 91 S.Ct. at 1354. (Footnotes omitted). Additionally, the Court has recognized that promptness in the adjudicatory process is essential to prompt payment. *Fusari v. Steinberg*, 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1974). The Court there noted that

> [p]rompt and adequate administrative review provides an opportunity for consideration and correction of errors made in initial eligibility determinations. Thus, the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process.

Based upon the Court's analysis in *Java, supra,* the federal regulations were formulated to reflect the necessity for timeliness in all phases of the administrative process. Noncompliance with these Promptness Standards clearly indicates that defendants are not providing methods of administration calculated to insure full payment when due in violation of both the federal regulations and the Social Security Act itself. See generally *Neal v. Ashler*, No. 78–0826 (N.D.Fla.1978) (Stafford, D. J.).

■ Defendants concede that they have not strictly complied with the federal regulations. They argue that they have substantially complied, however, and seek summary judgment in their own favor. They also raise a number of arguments in opposition to plaintiffs' motion for summary judgment. In the first place, they assert that the motion should be denied because it seeks relief which is different from that sought in the complaint. It is true that the complaint made no reference to the Appeals Promptness Standards which form the basis

of the instant motion. Defendants' argument is without merit, however, since the Pretrial Order dated March 8, 1976 expressly amended the complaint to include the claim that defendants have violated the Appeals Promptness Standards as well as a request for declaratory and injunctive relief requiring them to comply therewith. Pretrial Order ¶¶ I, IX.

■ Defendants also argue that this Court lacks jurisdiction over the subject matter of the instant action. Plaintiffs have based jurisdiction on 28 U.S.C. §§ 1337 and 1343. They do not appear to dispute, however, that § 1337, which invests the district courts with jurisdiction over acts of Congress regulating commerce or protecting trade and commerce against restraints, is inapplicable to the instant case. *See Aguayo v. Richardson*, 473 F.2d 1090, 1101, *cert. denied.* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1973). Rather they rely upon Section 1343 which confers jurisdiction on the district courts to redress deprivation of rights secured by the Constitution or by any statute providing for the equal rights of all citizens. Plaintiffs have alleged that the state's failure to provide prompt hearings of appeals from denials of unemployment compensation deprives them of their Fourteenth Amendment right to due process of law. They thus have brought their claim within the purview of Section 1343. Moreover, insofar as plaintiffs claim that the state has violated provisions of the Social Security Act, there is pendent jurisdiction over those claims. *See Chapman v. Houston Welfare Rights Organization*, —— U.S. ——, ——, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

■ Defendants' arguments to the contrary misconstrue the law. Their contention that violations of the Social Security Act do not rise to constitutional claims within the meaning of Section 1343, although a correct statement of the law in principle, completely ignores the concept of pendent jurisdiction. *Hagans v. Lavine, supra.* Thus, where, as here, plaintiff couples substantial constitutional claims with claims

that do not involve a constitutional deprivation, I may consider the latter as "pendent" to the constitutional claims and therefore within my jurisdiction.

■ Defendants also argue that because they provide initial determinations of eligibility for unemployment benefits in a timely manner, *Torres v. New York State Department of Labor*, 333 F.Supp. 341 (S.D.N.Y.1971), *aff'd* 405 U.S. 949, 92 S.Ct. 1185, 31 L.Ed.2d 228 (1972), they have fully complied with their constitutional and statutory obligations. *Torres* involved a challenge to the adequacy of New York State's practice which permitted the suspension of unemployment benefits after an analysis of new factual circumstances not known at the initial eligibility interview. Plaintiffs in *Torres* claimed that this termination without benefit of a full hearing violated the due process clause of the United States Constitution as well as the Social Security Act. The three-judge court disagreed and held that the procedure for redetermination comported with both constitutional and statutory mandates. The fact that this initial procedure has been approved, however, does not mean that defendants' first level appeals procedure has similarly passed constitutional and statutory scrutiny. The claims now raised by plaintiffs were not considered in *Torres* and thus that case is not controlling herein.

■ Turning to the merits of plaintiffs' claim, defendants assert that although they are not in strict compliance with the Appeals Promptness Standards, they are in substantial compliance since they have achieved the "greatest appeals promptness reasonably attainable in the circumstances . . . ." 41 Fed.Reg. 6757 (1976). Because of an inequitable allocation of federal moneys, in 1978 New York suffered a substantial reduction in the funds it received for administering its unemployment insurance program. Staff was reduced and the processing of appeals diminished significantly. Defendants claim they did the best they could under the circumstances and that, accordingly, plaintiffs are not entitled to summary judgment.

While defendants' argument is appealing at first blush, its pales on closer scrutiny. In the first place, their explanation for their most recent noncompliance does not explain their failure to comply with Appeals Promptness Standards from January 1972 to March 1977. Additionally, defendants have admitted that the funding problems they experienced have somewhat abated and that they intend to comply with Promptness Standards once again in the very near future. Finally, while I may sympathize with the state's budgetary problems, it is my job to balance these considerations against the hardships experienced by plaintiffs who may face months without benefits because the State does not act with reasonable promptness. *See White v. Mathews*, 559 F.2d 852 (2d Cir. 1977). In my view, problems with funding and staffing simply do not outweigh the necessity to promptly determine whether plaintiffs are entitled to unemployment benefits. *See generally Neal v. Asher, supra; Cornelius v. Minter*, 395 F.Supp. 616 (1st Cir. 1974). In any event, I am unwilling to find that even given the cutbacks in funding, defendants have done the best they could under the circumstances. Although the staff was reduced by approximately 16 percent (and the number of referees dropped 11 percent),[4] appeals promptness in September through December of 1978 fell proportionally by a much greater margin. For example, in November 1978, only 6.1 percent of first level appeals were rendered within 30 days as compared with 66.8 percent in November 1977.[5] Defendants have attributed their noncompliance solely to staffing problems due to underbudgeting. Affidavit of Louis Sitkin, March 6, 1979. Based on the statistics before me, however, it is difficult to explain their problems based on lack of funds alone.

■ Defendants also assert, in opposition to the motion for summary judgment, that plaintiffs have failed to join an indispensable party, the Secretary of Labor. Since defendants contend that their difficulties stem from underbudgeting, they urge that complete relief cannot be afforded unless the Secretary is directed to restore necessary funds. This argument, of course, loses much of its force in light of defendants' stated intention to comply with the Promptness Standards immediately. Moreover, as indicated above, I am unconvinced that defendants' problems arise from underfunding alone. I thus see no need to prolong this action, begun in 1973, any longer by insisting that the Secretary of Labor be made a party. In my view, complete relief may be afforded without him.[6]

■ The simple undisputed facts are that defendants are not complying with the Federal Appeals Promptness Standards although they have demonstrated that they have done so in the past and indicate that they intend to do so in the future. Their failure to do so presently indicates that

---

4. Affidavit of Louis Sitkin, March 6, 1979.

5. The following statistics have been provided:

APPEALS PROMPTNESS

| | Percent rendered in 30 Days | | | Percent rendered in 45 Days | | |
|---|---|---|---|---|---|---|
| | 1977 | 1978 | 1979 | 1977 | 1978 | 1979 |
| January | 45.1 | 63.5 | 19.9 | 77.7 | 87.3 | 55.0 |
| February | 58.0 | 64.4 | | 81.5 | 86.5 | |
| March | 59.8 | 64.8 | | 86.1 | 85.9 | |
| April | 65.9 | 69.8 | | 88.5 | 91.6 | |
| May | 70.3 | 70.8 | | 90.4 | 89.2 | |
| June | 74.0 | 62.0 | | 90.9 | 88.1 | |
| July | 59.7 | 52.5 | | 90.1 | 86.9 | |
| August | 64.0 | 53.1 | | 87.2 | 86.3 | |
| September | 80.8 | 27.6 | | 94.9 | 77.3 | |
| October | 69.5 | 18.1 | | 89.3 | 66.6 | |

APPEALS PROMPTNESS

| | Percent rendered in 30 Days | | | Percent rendered in 45 Days | | |
|---|---|---|---|---|---|---|
| | 1977 | 1978 | 1979 | 1977 | 1978 | 1979 |
| November | 66.8 | 6.1 | | 89.2 | 60.8 | |
| December | 70.7 | 10.7 | | 89.4 | 53.3 | |

6. Defendants suggest that compliance is demonstrated by the fact that the Secretary of Labor has not decertified New York State's Unemployment Insurance Program. However, because decertification is a drastic remedy which benefits no one, I am unconvinced that inaction by the Secretary necessarily means that defendants are not violating the federal statute. *See, e. g., California Dep't of Human Res. Devel. v. Java*, 401 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971); *Neal v. Ashler*, No. 78–0826 (N.D.Fla.1978); *Phillips v. Dawson*, 393 F.Supp. 360 (W.D.Ky.1975).

they are thwarting the purpose of the Social Security Act. Accordingly, plaintiffs are entitled to judgment in their favor and defendants are directed to comply with the Appeals Promptness Standards as set forth in 20 C.F.R. § 650.4(b). Defendants will also be required to submit to me copies of their monthly Appeals Promptness reports for a period of one year following entry of judgment. Defendants' cross-motion for summary judgment is denied.