Freddie DUNN, Ralph Jakes and Anthony Brownlee, individually and on behalf of all others similarly situated, Plaintiffs–Appellees–Cross–Appellants,

Municipal Labor Committee, Intervenor–Plaintiff–Appellee–Cross–Appellant,

v.

NEW YORK STATE DEPARTMENT OF LABOR, Commissioner of the New York State Department of Labor and New York State Unemployment Insurance Appeal Board, Defendants–Appellants–Cross–Appellees,

Robert Reich, Secretary of Labor, Defendant.

Nos. 471, 533, Dockets 94–6077, 94–6089.

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1994.

Decided Feb. 1, 1995.

486

John C. Gray, Jr., Brooklyn Legal Services Corp. B, Brooklyn, NY (Jill Zuccardy, Brooklyn Legal Services Corp. B, on the brief), for plaintiffs-appellees-cross-appellants.

David Raff, New York City (Robert L. Becker, Raff & Becker, on the brief), for intervenor-plaintiff-appellee-cross-appellant.

Maryellen Weinberg, Asst. Atty. Gen. (G. Oliver Koppell, Atty. Gen., Jane Lauer Barker, Anne L. Buckborough, Asst. Attys. Gen., on the brief), for defendants-appellants-cross-appellees.

Before FEINBERG, MESKILL and JACOBS, Circuit Judges.

JACOBS, Circuit Judge:

In 1979, the United States District Court for the Southern District of New York (Duffy, *Judge*) entered an order requiring that the New York State Department of Labor ("Department" or "NYDOL") expedite the initial administrative review of unemployment benefit claims denied by its local offices, and setting time parameters for that review. In a 1993 sequel to those proceedings, the plaintiff class of applicants (and the intervenor, a committee of labor unions) moved for an order of contempt, citing noncompliance by the Department of Labor in 105 of the preceding 113 months. Judge Duffy declined to hold defendants in contempt, but imposed on the Department periodic reporting requirements relating to future compliance and possible future remedial steps. Both sides appeal.

Defendants, having escaped a finding of contempt, appeal certain of the reporting obligations imposed by the district court. Plaintiffs' cross-appeal argues that the district court abused its discretion by failing to hold the Department in contempt and, in particular, by declining to order the further specific relief plaintiffs demanded. We affirm in all respects but one, and we vacate and remand solely as to the portion of the

order that defines certain of the State's reporting obligations by reference to the decree in a related case. *See* Fed.R.Civ.P. 65(d).

## BACKGROUND

This class action was originally commenced in 1973 pursuant to 42 U.S.C. § 1983 on behalf of "all ... persons who have been denied or will in the future be denied unemployment insurance benefits by the defendant [New York] Department of Labor pursuant to determinations based upon insufficient or incompetent information supplied by employers and others, which determinations have not been or will not be reviewed in a fair hearing with a decision thereon within a reasonable time." The complaint alleged that the Department was consistently failing to comply with the Federal Appeals Promptness Standards in its review of unemployment claims.

The district court's July 13, 1979 opinion held that, under federal law, states must provide an opportunity for a timely hearing before an impartial tribunal for claimants who are denied unemployment insurance. *Dunn v. New York State Dep't of Labor*, 474 F.Supp. 269, 271–73 (S.D.N.Y.1979) ("*Dunn I* "). In New York, claimants who are denied benefits by local offices may appeal to the Administrative Law Judge Section of the New York State Unemployment Insurance Appeal Board. Denial of the claim at this "first level" may then be appealed to a "second level"—the Appeal Board itself. Subsequent appeal is to the Appellate Division of the Supreme Court of the State of New York.

Federal regulations provide that the United States Secretary of Labor may cut off federal funds for administrative processing of unemployment claims if certain time parameters are not achieved. 42 U.S.C. § 503. Specifically, under 20 C.F.R. Part 650, 60 percent of "first level" (sometimes called "lower authority") appeals should be decided within 30 days of filing of the appeal; and 80 percent, within 45 days. Judge Duffy's 1979 order adopts these time parameters and requires defendants to fulfill them. *Dunn I*, 474 F.Supp. at 272. No regulation specifical-

ly sets requirements for "second level" (or "higher authority") appeals. These "second level" appeals, however, were not the subject of these proceedings.

A companion action, *MLC v. Sitkin*, No. 79 Civ. 5899 (RLC), has been pending in the same district, before Judge Carter, in which many of the same entities and interests, represented by the same counsel, have been disputing the fairness of the Appeal Board's processing of second level appeals.

On January 7, 1993, plaintiffs and the intervenor (hereinafter the "plaintiffs") filed a motion alleging that, between May 1983 and October 1992, defendants had failed to comply with the 1979 order in 105 out of 113 months. Plaintiffs moved for an order:

(1) adjudging Defendant New York State Department of Labor ("NYDOL") in civil contempt;

(2) declaring that plaintiffs are entitled to relief to enforce the judgment in this case;

(3) appointing a special master to recommend a long-term remedial plan or any other relief deemed appropriate;

(4) granting immediate relief by ordering defendants to reassign temporary administrative law judges ("ALJ's") in such a manner as to increase timely handling of hearings pending implementation of a remedial plan; and

(5) consolidating [the order] with *MLC v. Sitkin*, 79 Civ. 5899 (RLC) pursuant to Rule 42 of the Federal Rules of Civil Procedure.

*Dunn v. New York Dep't of Labor*, No. 73 civ. 1656, 1994 WL 48799, at *1 (S.D.N.Y. Feb. 16, 1994) ("*Dunn II* ").

The defendants conceded that they had not achieved strict compliance with the 1979 order, but cited an uptick in their promptness, and steps taken to ensure future compliance. On October 14, 1993, the district court issued an order deferring a ruling on the contempt motion until such time as the court could assess the effectiveness of the new steps instituted by the Department. In January 1994, the defendants submitted data showing a general upward trend in compliance rates.

In an order dated February 16, 1994, the district court denied the motion for contempt and further relief, noting that "[c]omplex social problems as well as economic conditions dramatically affect the [Department's] caseload." *Id.* at *2. However, because "statistics seem[ed] to suggest that the improved lower authority ['first level'] performance has occurred, in part, by diverting resources from higher authority appeals, thereby reducing the higher authority's promptness," the district court ordered a two-year monitoring program. *Id.* Thus Judge Duffy ordered defendant NYDOL:

> to submit a report to the Court [and plaintiffs] every six months for two years from the date of [the order] containing:
>
> > (1) lower and higher authority promptness percentages filed with the United States Department of Labor;
> >
> > (2) the number of unfilled [Administrative Law Judge] positions;
> >
> > (3) the percentage of cases that are not in compliance with the consent order entered in *MLC v. Sitkin*, 79 Civ. 5899; and
> >
> > (4) any written recommendations proposed by [plaintiffs].

*Id.* at *3 (footnote omitted). On appeal, defendants challenge paragraphs (1) and (3) of these reporting provisions.[1] Plaintiffs cross-appeal Judge Duffy's denial of their motion for contempt and further relief.

## DISCUSSION

### A. *Jurisdiction.*

■ We consider first plaintiffs' challenge to our appellate jurisdiction over defendants' appeal. District court jurisdiction was pursuant to 28 U.S.C. § 1343(3); appellate jurisdiction of plaintiffs' cross-appeal is pursuant to 28 U.S.C. § 1291. Plaintiffs argue, however, that appellate jurisdiction is lacking for the Department's appeal because the order requiring periodic reports is a monitoring scheme that might lead to an order of relief in the future but that mandates no relief in itself and therefore is neither a final judgment (pursuant to 28 U.S.C. § 1291) nor an injunction requiring defendants to "refrain from or engage in any activity" (pursuant to 28 U.S.C. § 1292(a)(1)). According to this logic, only if the district court at a later date decides to order future relief based on the monitoring will the action of the district court become appealable.

This argument misperceives the nature of the monitoring order. The court has directed the Department to compile data and make disclosures, activities that entail some expenditure of resources that otherwise would not be made. Defendants represented at oral argument that compilation of the required data—some of which they do not currently compile on a regular basis—is in itself a substantial undertaking. Having established the monitoring scheme (which may or may not be used in the future to evaluate further judicial action), the district court completed its work on this matter, at least for the time being. No other or further proceedings in this case are expressly contemplated by the order. Without review at this point, the burdens that defendants are ordered to bear would never be reviewed. We conclude that the district court has granted plaintiffs injunctive relief as defined by 28 U.S.C. § 1292(a)(1) and that appellate review of the order is proper.

### B. *The order to submit semi-annual reports.*

■ We review the district court's grant of injunctive relief for abuse of discretion. *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1214 (2d Cir.1993). The order requires defendants to submit data periodically in respect of "lower and higher authority promptness percentages [i.e., 'first level' and 'second level' proceedings] filed with the United States Department of Labor." Defendants argue that, because the initial 1979 order limited its finding to the conclusion that defendants had violated federal promptness standards for "first level" hearings, and the initial complaint made no reference to problems with "second level" appeals, an injunction that includes "second level" appeals is not commensurate with the scope of the in-

---

1. Defendants' primary brief in this appeal recites that they also challenge paragraph 4 of Judge Duffy's order; but their reply brief states that they do not object to paragraph 4.

fraction charged. Defendants rely on *Milliken v. Bradley*, 418 U.S. 717, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974) ("*Milliken I*") and *Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) ("*Milliken II*"), in which the Supreme Court invalidated a school desegregation plan for Detroit, because it affected both Detroit City schools *and* the surrounding suburban school districts. The Court held that it was improper to involve school districts in the desegregation plan that were "uninvolved with and unaffected by any constitutional violations." *Milliken II*, 433 U.S. at 270, 97 S.Ct. at 2752. By analogy, defendants argue that Judge Duffy's order failed to tailor the remedy to the scope of the violation.

Although the focus of this case has been the promptness requirements for "first level" review, "second level" review is closely related to the issues at stake. The district court found:

> The connection between higher authority and lower authority is obvious. If a claimant loses at the lower authority but is victorious at the higher authority, any delay at the higher authority has an extensive impact. On the other hand, if a claimant wins at the lower authority but loses at the higher authority, the claimant is required to pay back the benefits received, and he or she may be levied a penalty up to 22%. Once again, any delay would have a dramatic effect on the claimant.

*Dunn II*, 1994 WL 48799, at *2 n. 7. The district court's decision to include second level review in its order to furnish data was not an abuse of discretion. The order does not intimate that any subsequent or further relief will regulate or burden the second level. Nor do we decide if the district court has power to do so, if indeed the district court ever has occasion to consider it. This order does not regulate or burden the operations of the second level; it gathers information about it. Such information may have bearing on relief that the district court may one day consider in respect of the first level. For example, by illuminating the overall pressures of the appeals workload with which the defendants must contend, the second level data may ultimately justify the steps taken to achieve compliance at the first level. We affirm the portion of the district court order requiring defendants to submit reports concerning lower and higher authority promptness percentages filed with the United States Department of Labor.

■ Defendants also challenge the portion of the district court's order concerning the consent judgment in *MLC v. Sitkin*, which prescribes procedures to be followed in second level appeals. While not directly involving issues of promptness, the due process issues at stake in *Sitkin* were the same issues that led the court to allow the Municipal Labor Council, the plaintiff in *Sitkin*, to intervene in *Dunn* in 1984.

The text of this portion of the order violates Fed.R.Civ.P. 65(d), which requires that injunctions "shall be specific in terms; shall describe in reasonable detail, and not by reference to complaint or other document, the act or acts sought to be restrained." Fed.R.Civ.P. 65(d); *see also Thomas v. Brock*, 810 F.2d 448, 450 (4th Cir.1987). The district court's order does not recite the requirements of *Sitkin*, or annex a copy of the *Sitkin* order. True, there is a substantial identity of parties and counsel in *Dunn* and *Sitkin*, so that the violation of Rule 65(d) is technical, and the pursuit of this appeal apparently mindless. Still, even if it were permissible for an injunction to incorporate another document by reference, there is no indication that the *Sitkin* consent judgment is a fixed document: it is currently the subject of ongoing litigation before another district court judge. If the order in *Sitkin* were revised, it is unclear whether the order in *Dunn* would incorporate the original or conform to the revision.

The portion of the district court's order requiring defendants to report on the percentage of cases that are not in compliance with the consent order entered in *MLC v. Sitkin* is therefore vacated, and we remand to the district court to enter any further or modified relief, if only to re-serve the affected parties with a similar injunction order with the Sitkin consent decree attached thereto.

## C. Contempt.

 On the cross-appeal, plaintiffs challenge the district court's denial of their motion seeking an order of contempt and further relief. A district court's decision not to hold a party in contempt is reviewed by an appellate court for abuse of discretion. *Harley–Davidson, Inc. v. Morris*, 19 F.3d 142, 145 (3d Cir.1994). The failure to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt:

> [P]arties may be held in civil contempt for failure to comply with an order of the court if the order being enforced is clear and unambiguous, the proof of noncompliance is clear and convincing, and [the parties] have not been reasonably diligent and energetic in attempting to accomplish what was ordered.

*United States v. O'Rourke*, 943 F.2d 180, 189 (2d Cir.1991) (citations and internal quotations omitted).

In declining to find the NYDOL in contempt, the district court observed:

> The issue of unemployment appeals is ... very complicated. Complex social problems as well as economic conditions dramatically affect the NYDOL's caseload. These are obviously factors over which the NYDOL has no control, and they must be considered when determining whether the NYDOL has been reasonably diligent.

*Dunn II*, 1994 WL 48799, at *2. The court then took note of the Department's new initiatives to improve efficiency including, "flexibly allotting ALJ's to where they are most needed[,] ... using advanced computer systems to reduce waste and improve efficiency, ... [the addition of] new case tracking software[,] ... [and the creation of] a training program to speed up the process by which ALJ's are trained." *Id.*, at *2 n. 4. The court also found that promptness figures submitted for 1993 showed improvement attributable in part to these changes. The district court did not abuse its discretion when it declined to hold defendants in contempt or to grant other specific requests for further relief sought by plaintiffs.

 We are somewhat puzzled by the district court's apparent decision not to order the consolidation of this case with *MLC v. Sitkin*, as requested by the plaintiffs. Since the district court evidently contemplates that the relief in *Sitkin* will inform or have bearing on the relief in this action, consolidation seems to recommend itself. Nevertheless, the court's apparent refusal to consolidate the actions is not an abuse of discretion.

## CONCLUSION

In sum, we affirm in all respects, except that we vacate the portion of the district court's order which requires defendants to report on the percentage of cases that are not in compliance with the consent order entered in *MLC v. Sitkin*, and remand for any further proceedings.