Certiorari Denied, April 3, 2013, No. 34,045

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2013-NMCA-055

Filing Date: January 31, 2013

Docket No. 31,581

**FRANK MILLAR,**

Petitioner-Appellee,

**v.**

**NEW MEXICO DEPARTMENT OF
WORKFORCE SOLUTIONS and
WESTERN REFINING SOUTHWEST, INC.,**

Respondents-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Barbara J. Vigil, District Judge**

New Mexico Legal Aid, Inc.
Timothy R. Hasson
Santa Fe, NM

for Appellee

New Mexico Department of Workforce Solutions
Marshall J. Ray
Elizabeth A. Garcia
Albuquerque, NM

for Appellant

**OPINION**

**VANZI, Judge.**

**{1}** The New Mexico Department of Workforce Solutions (DWS) appeals from a district court order reversing a decision of the DWS's Appeals Tribunal (Tribunal). The Tribunal

determined that claimant Frank Millar was required to repay an overpayment of unemployment compensation benefits in the amount of $4,931. The district court held that the Tribunal's hearing, conducted five months after Millar started receiving benefits, violated the timeliness requirements for processing appeal claims under state and federal law. In the alternative, the district court found that the doctrine of equitable estoppel barred DWS from claiming and collecting an overpayment from Millar. We disagree with the district court's decision and reverse.

## BACKGROUND

### Factual Background

{2}     Millar was discharged from his employment with Western Refining Southwest, Inc. (Western Refining) on November 20, 2009. He filed for unemployment benefits on December 6, 2009. After preliminary fact finding, the DWS claims examiner issued a notice of claims determination (NCD) in favor of Millar granting him benefits of $269 per week. The NCD stated that the determination was final "unless an appeal is filed within fifteen calendar days from[] 01/07/2010." In addition, the NCD stated, "If your employer challenges a decision allowing benefits to you and the appeal decision is against you, you will be required to repay those benefits." On January 21, 2010, Western Refining appealed the claims examiner's decision.

{3}     It is undisputed that DWS did not immediately inform Millar that it had received the January 21, 2010 notice of appeal from Western Refining. The parties further agree that Millar did not learn of the appeal until the Tribunal sent out a notice of hearing on June 4, 2010, setting the hearing for June 16, 2010. However, he continued to receive benefits until April 17, 2010. At the June 16, 2010 hearing, the Tribunal found Millar to be disqualified from benefits due to misconduct connected with his employment. Millar subsequently received an overpayment notice for the unemployment payments that he had received from December 19, 2009, until his benefits were exhausted at the end of April 2010.

{4}     Although he did not appeal the misconduct issue, Millar timely appealed the overpayment determination through the DWS's administrative process. The Tribunal affirmed the claims examiner's decision that Millar had been overpaid benefits in the amount of $4,931 and that the benefits must be refunded to DWS. In turn, the DWS's cabinet secretary (secretary) upheld the January 7, 2011 determination of the Tribunal. The secretary's affirmation was the final administrative decision in the matter. Having exhausted his administrative remedies, Millar appealed to the district court under Rule 1-077 NMRA and NMSA 1978, Section 51-1-8(M), (N) (2004). The district court granted Millar's writ of certiorari and, after a hearing, reversed the decision of the secretary, affirming the Tribunal. Specifically, the court found that DWS was out of compliance with federal and state timeliness standards for processing appeals and that the long delay in scheduling an appeal hearing "unfairly resulted in an onerous overpayment claim." In the alternative, the district court ruled that DWS was equitably estopped from pursuing overpayments against

Millar. This appeal timely followed.

**DISCUSSION**

**{5}** DWS raises two issues on appeal: (1) whether the district court exceeded its authority in holding that the Tribunal violated the timeliness requirements of 20 C.F.R. §§ 650.1 to 650.4 (2006, as amended through 2013) and Section 51-1-8(D); and (2) whether the district court erred in ruling that the doctrine of equitable estoppel barred DWS from recovering the overpayments to Millar. We begin with the standard of review and an overview of the law relating to the payment of unemployment benefits and the recovery of overpayments. We then turn to the issues raised by DWS.

**Standard of Review**

**{6}** Generally, we apply the same standard of review as the district court, and we review an administrative order to determine whether DWS acted fraudulently, arbitrarily, or capriciously, or whether, based on the whole record, the decision is not supported by substantial evidence. *See* Rule 1-077(J); *San Pedro Neighborhood Ass'n v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 2009-NMCA-045, ¶¶ 10-11, 146 N.M. 106, 206 P.3d 1011. "This Court . . . will conduct the same [standard of] review of an administrative order as the district court sitting in its appellate capacity[.]" *Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 16, 133 N.M. 97, 61 P.3d 806. Under the whole record standard of review, "we look not only at the evidence that is favorable, but also evidence that is unfavorable to the agency's determination." *Fitzhugh v. N.M. Dep't of Labor*, 1996-NMSC-044, ¶ 23, 122 N.M. 173, 922 P.2d 555. Questions of substantial compliance with a statute depend on statutory construction, and we review those questions de novo. *See Stennis v. City of Santa Fe*, 2008-NMSC-008, ¶ 13, 143 N.M. 320, 176 P.3d 309 ("Interpretation of . . . statutes is a question of law that we review de novo.").

**Administrative Procedures in the Payment of Unemployment Benefits and the Recovery of Overpayments**

**{7}** In order to frame the factual setting and legal issues raised in this appeal, we summarize the relevant statutes and administrative proceedings relating to the payment of unemployment benefits in New Mexico and the recovery of over-payments. Unemployment compensation is an insurance program "to be used for the benefit of persons unemployed through no fault of their own" and is designed to "lighten [the] burden which now so often falls with crushing force upon the unemployed worker and his family." NMSA 1978, § 51-1-3 (1953). Benefits run for twenty-six weeks, NMSA 1978, § 51-1-4(E) (2011), but may be continued for an additional twenty-six weeks during times of high employment. NMSA 1978, § 51-1-48(E) (2011). An unemployed worker is not eligible for benefits if he has left work without good cause or has been discharged for misconduct connected with the employment. NMSA 1978, § 51-1-7(A)(1), (2) (2011).

3

**{8}** The initial determination of whether a claimant is eligible for unemployment benefits is made by a claims examiner who conducts preliminary fact finding, including obtaining statements from the claimant and employer. *See* 11.3.300.308(A) NMAC (11/15/2012). Once the claim has been evaluated, the claims examiner issues a NCD. 11.3.300.308(C) NMAC. A party dissatisfied with the determination of the claims examiner may appeal the initial determination. If an initial determination is made in favor of the claimant and payment of benefits is begun, payments shall not be stopped without prior notice and an opportunity to be heard. 11.3.300.308(E) NMAC. This provision necessarily results in some payments being made upon an initial determination of eligibility that are subsequently overturned. As a result, the NCD advises the claimant that if the appeal decision is against him, he will be required to repay the benefits received. Following a hearing before an Administrative Law Judge (ALJ) within DWS's appeals tribunal at which parties may be represented by counsel and may present testimonial and documentary evidence, the ALJ issues a decision of the appeals tribunal. *See* 11.3.500.10 NMAC (11/15/2012). The parties may further appeal the decision of the ALJ first to the secretary, who may enter a decision, refer the decision to the board of review directly, or if the secretary does not take action within fifteen days, the decision will be automatically scheduled to be heard before the board. 11.3.500.12(B), (C) NMAC (11/15/2012). Once the secretary or board of review issues a decision, the appellant has exhausted administrative review. 11.3.500.13 NMAC (11/15/2012). Finally, an aggrieved party may appeal that decision as of right to the district court. Rule 1-077(A).

**{9}** DWS's authority to recover overpayments of unemployment benefits is governed by Section 51-1-8(J) and NMSA 1978, Section 51-1-38(F) (1993). In "double affirmation" cases—those in which a decision in favor of the claimant is then affirmed by either the tribunal, board of review, or judicial action only to be ultimately reversed—Section 51-1-8(J) provides that the claimant is not liable for overpayments. This case, however, involves "single affirmation" in which the Tribunal and secretary disagreed with the decision of the claims examiner. In such cases, the overpayments are not "unemployment compensation," and the monies are not being used for the administration of unemployment compensation laws and must be recouped. Section 51-1-38(F) states that a claimant

> who has received benefits as a result of a determination or decision of the department . . . that he was eligible and not disqualified for such benefits and such determination or decision is subsequently modified or reversed by a final decision . . . irrespective of whether such overpayment of benefits was due to any fault of the person claiming benefits, *shall*, as determined by the secretary or his authorized delegate, either be liable to have such sum deducted from any future benefits payable to him . . . or be liable to repay to the department . . . a sum equal to the amount of benefits received by him for which he was not eligible or for which he was disqualified or that was otherwise overpaid to him[.]

4

(Emphasis added.)  Thus, DWS is required by law to issue a demand for a refund of improperly paid benefits whenever a determination of overpayment is made.  It is against this backdrop that we proceed to analyze the decision of the district court.

**The Regulation's Timeliness Guidelines**

**{10}**   As we have said, Millar's disqualification for receipt of unemployment compensation benefits in the amount of $4,931 is not at issue in this case.  We address only whether DWS may seek recoupment of those benefits in full.  In its order, the district court held that the "Tribunal hearing conducted more than five months after [Millar] was awarded benefits was untimely, in that it violated the requirements of state and federal law, found at [Section] 51-1-8[(D)] and 20 C.F.R. [§] 650.1 [to] 20 C.F.R. [§] 650.4."  DWS first contends that the district court exceeded the scope of its authority in reviewing the federal time-lapse standards, including a timeliness quality report showing New Mexico's thirty-day and forty-day compliance rates at 2.8% and 5%, respectively, because such evidence was not properly presented in the administrative hearing.  DWS then argues that the district court misapplied federal law in holding that the Tribunal violated state and federal regulations.

**{11}**   We disagree with DWS that evidence regarding compliance with the federal time-lapse standards was not part of the administrative record and that, therefore, Millar failed to properly preserve the issue for review by the district court.  Rule 1-077(J) states that the "district court shall determine the appeal upon the evidence introduced at the hearing before the board of review or secretary of the [DWS]."  Although preservation of an issue is a prerequisite to its review on appeal, "the preservation requirement should be applied with its purposes in mind, and not in an unduly technical manner."  *Gracia v. Bittner*, 120 N.M. 191, 195, 900 P.2d 351, 355 (Ct. App. 1995).

**{12}**   As an initial matter, the Codes of Federal Regulation are federal law and, if relevant, may properly be considered by the district court.  More importantly, in his motion for relief from claim of overpayment filed in the Tribunal, Millar specifically argued that the overpayment claim against him was unlawful because the hearing violated the time-lapse standards of state and federal law.  In support of his argument, Millar attached copies of the relevant state and federal law, as well as a timeliness and quality report, to his motion.  Further, during the hearing, counsel for Millar directed the ALJ to the exhibits, and the ALJ acknowledged that he was looking at them.  In its reply brief, DWS does not dispute Millar's assertion that he presented the evidence in his motion and at the administrative hearing.  We conclude that the documents were sufficiently made part of the record before the Tribunal and that, therefore, the district court did not violate Rule 1-077(J).  We now turn to DWS's contention that the district court misapplied federal law in holding that the untimely appeal hearing before the Tribunal violated state and federal time-lapse standards and that, therefore, Millar did not have to repay the overpayment.

**{13}**   New Mexico's unemployment compensation program is jointly operated by the federal and state governments.  While New Mexico administers the program pursuant to its

own laws, it must nevertheless adhere to federal guidelines in doing so. *See* 42 U.S.C. § 502(a) (2004) (requiring that all federal monies received are used for the proper and efficient administration of unemployment compensation laws). Further, 42 U.S.C. § 503(a)(1), (3) (2012) provides that state laws regarding unemployment compensation must include provisions for methods of administration that are "reasonably calculated to insure full payment of unemployment compensation when due" and an opportunity for a fair hearing for all individuals whose claims for unemployment compensation have been denied. The secretary of labor has interpreted the above to require that hearings be commenced and appeals decided "with the greatest promptness that is administratively feasible." 20 C.F.R. § 650.3(a)(2). Further, the secretary of labor has construed 42 U.S.C. § 503(b)(2) as requiring states to substantially comply with the required provisions of state law. 20 C.F.R. § 650.3(b). Accordingly, 20 C.F.R. § 650.4(b) states:

> A State will be deemed to comply substantially with the State law requirements set forth in § 650.3(a) with respect to first level appeals, the State has issued at least 60 percent of all first level benefit appeal decisions within 30 days of the date of appeal, and at least 80 percent of all first level benefit appeal decisions within 45 days.

Section 51-1-8(D) incorporates 20 C.F.R. §§ 650.1 through 650.4 by reference.

**{14}**     DWS argues that the standards set forth in 20 C.F.R. § 650.4(b) only offer guidelines in processing unemployment appeals and do not set absolute deadlines for processing an individual first level appeal. We agree and see nothing in the broad language of the regulation requiring otherwise. We conclude that the plain language of 20 C.F.R. § 650.4(b) does not establish any mandatory statutory time limit that would require Millar to be notified of the pending appeal or within which the hearing had to be held. More compelling, however, is DWS's assertion that the timeliness rules set forth above do not eliminate a disqualified claimant's liability for overpayments.

**{15}**     As we have stated and discuss in further detail below, the timeliness regulations are primarily concerned with ensuring that unemployment benefits are promptly provided to eligible claimants. There is no dispute that Millar began receiving benefits as soon as the claims examiner issued the NCD in his favor, and he continued to receive those benefits for the full twenty-six weeks. On the other hand, Section 51-1-38(F) unequivocally imposes a statutory duty upon DWS to recover funds issued to claimants who are later found to be ineligible or disqualified from receiving benefits. We are concerned that DWS did not notify Millar that Western Refining had filed an appeal yet continued to pay him benefits for several months after the appeal was filed. There is nothing humane about a delay of some months in not informing an unemployed person that his employer is contesting the award of benefits and that he may lose them. Nevertheless, nothing in the above regulations allows a claimant who is subsequently disqualified from receiving benefits to challenge the DWS's mandatory obligation to recover overpayments. The refund demand was timely, and Millar is liable to repay the unemployment benefits he collected.

**{16}** Millar does not point to any case in which a claimant has challenged—let alone successfully—an overpayment obligation based on DWS's failure to adhere to the suggested timelines for processing unemployment appeal decisions, and we have found none. He does, however, cite to *Dunn v. New York State Department of Labor*, 474 F. Supp. 269 (S.D.N.Y. 1979), in support of his assertion that an individual claimant may bring a cause of action based on the same time-lapse standards at issue in this case. In *Dunn*, the plaintiffs, on behalf of themselves and a class of similarly situated claimants, brought an action pursuant to 42 U.S.C. § 1983 (1996) seeking declaratory and injunctive relief against the state department of labor and its industrial commissioner. *Dunn*, 474 F. Supp. at 271-72. The plaintiffs alleged that New York's failure to provide prompt hearings of unemployment compensation appeals deprived them of their Fourteenth Amendment due process rights to receive prompt payment of unemployment compensation under the "when due" provision of 20 C.F.R. § 503(a)(1). *Dunn*, 474 F. Supp. at 272. The federal district court agreed, noting the United States Supreme Court's recognition of the importance of promptly providing unemployment insurance benefits to eligible claimants. *Id.* at 273 (citing *Cal. Dep't of Human Res. v. Java*, 402 U.S. 121 (1971)). Moreover, the court said, "promptness in the adjudicatory process is essential to prompt payment." *Dunn*, 474 F. Supp. at 273. It entered judgment for the plaintiffs and required the defendants to submit copies of their monthly appeals promptness reports to the court for a period of one year. *Dunn*, 474 F. Supp. at 276. Unlike *Dunn*, this case does not involve a claim of a constitutional deprivation but instead seeks a waiver of money owed for benefits to which a claimant was disqualified and to which he has no vested right. We conclude that neither the regulations nor *Dunn* support Millar's position that he has a right to unemployment compensation benefits to which he was not entitled and which DWS has a statutory obligation to recover.

**{17}** Although prompt payment is not the only consideration of procedural fairness to a claimant, prompt notice of benefits being in jeopardy must be as well. However, the district court's interpretation of 20 C.F.R. § 650.4(b) cannot be reconciled with DWS's statutory obligation to recover overpayments from an initial favorable eligibility ruling that is subsequently overturned on appeal. We conclude that the district court misapplied the federal and state time-lapse standards to the facts of this case. Accordingly, we reverse its decision that the Tribunal acted arbitrarily and capriciously in ordering Millar to repay the overpayment.

**The Application of Equitable Estoppel**

**{18}** As an alternative ruling, the district court found that the doctrine of equitable estoppel barred DWS from claiming and collecting the overpayment from Millar. Specifically, the district court relied on the New Mexico Supreme Court's decision in *Waters-Haskins v. New Mexico Human Services Department*, 2009-NMSC-031, 146 N.M. 391, 210 P.3d 817, in reaching its decision. For the reasons that follow, we conclude that the district court erred in applying the doctrine of equitable estoppel to the facts of this case.

**{19}** The parties agree that estoppel cannot be applied contrary to statutory requirements

7

and can only be applied against the state in exceptional circumstances where there is a shocking degree of aggravated and overreaching conduct or where right and justice demand it. *Envtl. Control, Inc. v. City of Santa Fe*, 2002-NMCA-003, ¶ 22, 131 N.M. 450, 38 P.3d 891. "With respect to New Mexico state agencies in particular, the doctrine only is available to bar those rights or actions over which an agency has discretionary authority." *Waters-Haskins*, 2009-NMSC-031, ¶ 17. Thus, "[e]quitable relief is not available when the grant thereof would violate the express provision of a statute." *Coppler & Mannick, P.C. v. Wakeland*, 2005-NMSC-022, ¶ 8, 138 N.M. 108, 117 P.3d 914 (internal quotation marks and citation omitted). Even in those circumstances, the party raising estoppel must show the result of estoppel would not be contrary to statutory requirements and must establish the six essential elements of estoppel. *Waters-Haskins*, 2009-NMSC-031, ¶¶ 16-17 (estopping the state only after first determining whether the state was acting in its discretionary authority, the basic elements of estoppel were met, and right and justice demanded it). We begin by first deciding whether the provisions of Section 51-1-38(F) are mandatory or discretionary.

**{20}** As we have set forth above, DWS has a statutory duty to recover benefits paid to claimants later found to be ineligible or disqualified. Section 51-1-38(F) states that any overpayment of benefits, regardless of the fault of the person claiming the benefits, "shall" be repaid either from any future benefits payable to him or in "a sum equal to the amount of benefits received by him for which he was not eligible or for which he was disqualified or that was otherwise overpaid to him[.]" The use of the word "shall" imposes a mandatory, not discretionary, requirement. *See* NMSA 1978, § 12-2A-4(A) (1997) (explaining that " '[s]hall' and 'must' express a duty, obligation, requirement or condition precedent"). Accordingly, although DWS has the discretion to deduct overpayments from a claimant's future benefits or seek repayment, given the mandatory language of Section 51-1-38(F), it does not have any discretion to forego overpayments altogether.

**{21}** Millar concedes that Section 51-1-38(F) "appears to be mandatory and without exception." Nevertheless, he argues that DWS in fact has discretion regarding overpayments. We are not persuaded. First, Millar contends that because the Federal Emergency Unemployment Compensation Act, Pub. L. 110-252, § 4005(b), 122 Stat. 2323 (2008), and the Trade Act of 1974, 19 U.S.C. § 2315(a)(1) (2011), provide some discretion to waive overpayments, at least with respect to federal extended unemployment benefits, DWS must have such discretion as well. However, the federal discretionary authority has no bearing in this case, particularly where Millar was paid state unemployment insurance benefits, not federal extended benefits. Further, we reiterate that unlike the federal discretionary authority over repayment of extended benefits, the New Mexico Legislature has unambiguously mandated that DWS shall not have any discretion to waive claims of overpayment. *See* § 51-1-38(F).

**{22}** We also reject the district court's and Millar's reliance on *Waters-Haskins* as inapplicable to the facts of this case. In *Waters-Haskins*, the New Mexico Human Services Department (HSD) sought repayment of food stamps erroneously issued to the appellant for just under the period of a year. 2009-NMSC-031, ¶ 1. HSD argued that federal regulations

mandated that it pursue collection of overpayment of food stamps and, as a result, HSD had no discretion in its policies for establishing overpayment claims. *Id.* ¶ 18. Our Supreme Court disagreed and found that the food stamp regulations expressly allowed the HSD to compromise or waive overpayment claims. *Id.* ¶ 20 (noting that the United States Department of Agriculture, when creating the food stamps program, gave state agencies "broad authority to establish and collect overpayments claims, and the creation of the policies to meet those ends are a discretionary exercise within the scope of that authority"). In contrast to the food stamp regulatory scheme discussed in *Waters-Haskins*, the unemployment compensation laws at issue here do not permit DWS to "compromise or waive" overpayment liability.

**{23}** We are also not persuaded by Millar's argument that because DWS "elsewhere lays claim to broad discretion in the collection of overpayments of state unemployment benefits," equitable estoppel is a valid option for the district court to apply here. Specifically, Millar points to regulations that permit DWS, at its discretion, not to pursue collection of overpayments which are more than ten years old or less than $50 and more than seven years old, or are otherwise uncollectible. *See* 11.3.300.324 NMAC (01/01/2003) (amended 11/15/2012). We note that nowhere do these regulations authorize DWS discretion for a complete waiver of overpayments, and doing so would necessarily conflict with the statutory obligation imposed upon DWS by Section 51-1-38(F), thus thwarting the legislative objectives of recovering taxpayer funds to which an ineligible claimant is not entitled. At the very least, the regulations do not grant the type of "broad authority to establish and collect overpayment[s]" that our Supreme Court found existed in *Waters-Haskins*. 2009-NMSC-031, ¶ 20. Because DWS has no discretionary authority in pursuing collection of any overpayment, the doctrine of equitable estoppel is not a valid defense to Millar's claim that he should be excused from repaying the unemployment benefits to which he was not entitled to receive.

**{24}** Having concluded that DWS has no discretion to forego recovery of overpayments, we need not conduct any further analysis regarding the doctrine of equitable estoppel based on the facts of this case. We acknowledge that any resulting hardship to Millar to repay the benefits is unfortunate, but recoupment is crucial to the preservation of the ongoing integrity of the unemployment compensation system, and our Legislature recognized as much when it enacted Section 51-1-38(F). The affirmative obligation imposed on DWS to recover full repayment of benefits from Millar forecloses the application of equitable estoppel against it. The decision of the district court is reversed.

**CONCLUSION**

**{25}** For the reasons set forth above, we reverse the decision of the district court.

**{26}** **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for** _Millar v. N.M. Dep't of Workforce Solutions_**, No. 31,581**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Estoppel

**WORKERS COMPENSATION**
Time Limitations
Workers' Compensation Regulations
Workers' Compensation, General