2005-NMSC-022

117 P.3d 914

**COPPLER & MANNICK, P.C., Paul D. Mannick and Kathy P. Mannick, Plaintiffs–Respondents,**

v.

**Robin G. WAKELAND, Defendant–Petitioner.**

No. 28,913.

Supreme Court of New Mexico.

June 20, 2005.

Robin G. Wakeland, Santa Fe, NM, for Petitioner.

Coppler & Mannick, P.C., Paul D. Mannick, Santa Fe, NM, for Respondents.

## OPINION

SERNA, Justice.

{1} The Court of Appeals consolidated two related actions, the first involving foreclosure on a judgment lien and the second involving voluntary waste of the foreclosed property. The district court had ruled in the waste proceeding that Defendant Robin G. Wakeland was equitably estopped from asserting her statutory homestead exemption in the foreclosure proceeding. The Court of Appeals affirmed the judgment in the waste proceeding on the question of liability and damages. The Court also determined that the district court erred in finding equitable estoppel but allowed the district court to use its equitable powers to supervise the execution of judgment in order to ensure the satisfaction of judgment in the waste proceeding with the homestead exemption. We granted Wakeland's petition for writ of certiorari to the Court of Appeals on the sole issue of the Court of Appeals' equitable remedy. We affirm but clarify and limit the rationale of the Court of Appeals.

## I. Facts

{2} Plaintiffs Paul D. Mannick and Kathy P. Mannick (the Mannicks) filed a foreclosure action in district court on a judgment lien against Wakeland's real property. The underlying judgment supporting the lien, in the amount of $87,895.08 plus interest, was based on Wakeland's intentional tortious acts and bad faith. In its initial judgment, the district court ordered the foreclosure of Wakeland's property and found that Wakeland was not entitled to a homestead exemption. The Court of Appeals, in a memorandum opinion, reversed the district court with respect to the homestead exemption and remanded to the district court with instructions to grant Wakeland her statutory homestead exemption.

{3} In a separate action, Plaintiffs Coppler and Mannick, P.C., and the Mannicks filed suit against Wakeland for voluntary waste in relation to the foreclosed property. Wakeland, with knowledge of the foreclosure, had removed permanent fixtures from the foreclosed property, including all heaters, sinks, cabinets, and doors, as well as the water heater, and had damaged the property by making large holes in the walls and covering the windows with varnish. The extensive damage to the property required over $10,000 in repairs. In addition, Wakeland had fraudulently attempted to encumber the water rights of the property.

{4} While the waste action was pending, the district court reviewed the mandate of the Court of Appeals in the foreclosure case and awarded a homestead exemption of $30,000 to Wakeland "subject to the judgment of this Court in" the voluntary waste action. The Court of Appeals reversed this order as an improper set-off against the homestead exemption. The Court remanded for the district court to award the homestead exemption to Wakeland. However, the district court declined to enter judgment on the mandate until the resolution of the waste action.

{5} Following a trial in the waste claim, the district court found that Wakeland's conduct was willful and malicious and committed with the intent to violate the Mannicks' rights under the foreclosure judgment. The court entered judgment in favor of the Mannicks and Coppler and Mannick, P.C., and awarded $34,100 in actual damages and $10,000 in punitive damages. The district court also concluded on the basis of this award, as well as the lack of any other means for Wakeland to satisfy the judgment, that Wakeland was equitably estopped from pursuing her homestead exemption. Noting the binding Court of Appeals' mandate in the foreclosure action to grant a homestead exemption to Wakeland, the district court stated, "Nevertheless, the court finds and concludes that, under these particular and unusual circumstances, it would be unjust and inequitable to allow ... Wakeland to pursue any legal action against [the Mannicks] to recover the $30,000 homestead ex-

emption and that [she] would be unjustly enriched by any such legal action."

{6} Wakeland appealed the judgment in the waste action and the district court's failure to award the homestead exemption in the foreclosure action. The Court of Appeals consolidated the appeals on its own motion. Among other issues, the Court of Appeals addressed the district court's application of equitable estoppel to the homestead exemption. *Mannick v. Wakeland,* No. 24,078, ¶¶ 27–33, 138 N.M. 113, 117 P.3d 919, 2005 WL 1901684 (N.M.Ct.App. Aug. 24, 2004). The Court determined that the district court improperly relied on equitable estoppel because of the absence of deceptive conduct, false representation, or concealment of material facts by Wakeland.[1] *Id.* ¶¶ 30–33. Nonetheless, the Court of Appeals noted the egregiousness of Wakeland's conduct and the inherent injustice of allowing Wakeland to benefit from her malicious acts. *Id.* ¶¶ 34–35. The Court of Appeals reviewed comparable homestead exemptions in other states and observed that New Mexico's homestead exemption, by not having the type of limits imposed in other states, is more susceptible to abuse and "makes our creditors especially vulnerable to the debtor who uses the homestead exemption as a perpetual shield of assets." *Id.* ¶ 37. As a result, the Court invoked the district court's inherent equitable power "to do justice." *Id.* ¶ 34. In the initial appeals of the foreclosure action, the Court had rejected the notion of a set-off based on a judgment in the voluntary waste proceeding. The Court indicated that a set-off would be equivalent to a garnishment of the homestead exemption, which was prohibited by this Court's opinion in *Laughlin v. Lumbert,* 68 N.M. 351, 353–54, 362 P.2d 507, 509–10 (1961). In the present appeal, however, the Court of Appeals stated that the district court could use its equitable supervisory powers to ensure that Wakeland receive her homestead exemption and be required to satisfy the judgment in favor of the Mannicks simultaneously. *Mannick,* No. 24,078, ¶¶ 38, 138 N.M. 113, 117 P.3d 919, 2005 WL 1901684. The Court indicated that the dis-

trict court could accomplish this outcome "through the appointment of a limited receiver or through an offset to the waste judgment." *Id.* Although the Court of Appeals acknowledged that its remedy in the present appeal "may appear similar to a garnishment, the extraordinary circumstances of this case require equitable intervention to assure that justice is done." *Id.* The Court did not view this remedy as inconsistent with its earlier orders in the foreclosure action because, at that time, "the waste case had not yet been litigated." *Id.*

## II. Equitable Remedies Applied to a Homestead Exemption

{7} The Legislature has provided for "a homestead of thirty thousand dollars ($30,-000) exempt from attachment, execution or foreclosure by a judgment creditor and from any proceeding of receivers or trustees in insolvency proceedings and from executors or administrators in probate." NMSA 1978, § 42–10–9 (1993). In *Laughlin,* we addressed the question of whether "money claimed exempt from execution ... and still in the hands of a Special Master appointed by one court is subject to garnishment to satisfy a judgment recovered in another court in this state." 68 N.M. at 352, 362 P.2d at 508. This Court observed that "[t]he general rule applied almost universally is to the effect that absent statutes providing otherwise, property of a debtor in custodia legis is not subject to garnishment." *Id.* at 353, 362 P.2d at 509.

[I]t seems to us that the result would be rather anomalous if upon an exemption being granted appellant in one case, the money determined to be exempt was held to be immediately subject to garnishment in another action. The money being exempt under the statute, it was not subject to garnishment or if successfully garnisheed could be claimed exempt....

*Id.* at 354, 362 P.2d at 509.

{8} The district court's attempted set-off and the Court of Appeals' remedy in

---

1. The Mannicks did not seek review of the Court of Appeals' analysis of equitable estoppel, and we

therefore do not reach this issue.

the present appeal, which effectively garnishes the exemption through a receivership or a set-off in order to satisfy another judgment, is in direct conflict with this authority. We do not believe that the general equitable power of the district court, upon which the Court of Appeals relied for its remedy, provides sufficient authority by itself to distinguish this case from *Laughlin.* "It is a basic maxim that equity is ancillary, not antagonistic, to the law. Equitable relief is not available when the grant thereof would violate the express provision of a statute." *Dep't of Transp. v. Am. Ins. Co.,* 268 Ga. 505, 491 S.E.2d 328, 331 (1997) (footnote, quotation marks, and quoted authority omitted). The general equitable power of the district court cannot overcome the public policy established by the Legislature in Section 42–10–9. *See T.F. v. B.L.,* 442 Mass. 522, 813 N.E.2d 1244, 1253–54 (2004) ("It is a maxim that equity follows the law as declared by a statute.... Equity is not an all-purpose judicial tool by which the 'right thing to do' can be fashioned into a legal obligation possessing the legitimacy of legislative enactment.") (quotation marks and quoted authority omitted); *see also Sims v. Sims,* 1996–NMSC–078, ¶ 30, 122 N.M. 618, 930 P.2d 153 ("[O]nly if a statute so provides with express language or necessary implication will New Mexico courts be deprived of their inherent equitable powers.").

■ {9} "The purpose of a homestead exemption is to benefit the debtor." *Morgan Keegan Mortgage Co. v. Candelaria,* 1998–NMCA–008, ¶ 7, 124 N.M. 405, 951 P.2d 1066. Its goal is to "prevent families from becoming destitute as the result of misfortune through common debts which generally are unforeseen." *Laughlin,* 68 N.M. at 354, 362 P.2d at 509–10 (quotation marks and quoted authority omitted). The Legislature provided that the exemption is not subject to attachment, and this Court has held, in the specific context of the exemption being held by a Special Master, similar to the remedy proposed by the Court of Appeals, that an exemption is not subject to garnishment to satisfy a separate judgment.

The homestead exemption law does not relieve one from his [or her] moral and legal obligation to pay what he [or she] owes. But experience has taught that in the long run obligations are more likely to be fulfilled by those whose connections with the community are stabilized by a protected interest in a relatively permanent place of abode than by those not so anchored. The result is that just claims of a particular claimant may be deferred or defeated. Nevertheless, review of our decisions ... shows that the policy of giving the debtor "sanctuary" from just claims in his [or her] "homestead" has prevailed with significant uniformity.

*Denzer v. Prendergast,* 267 Minn. 212, 126 N.W.2d 440, 443 (1964) (citations omitted). We believe that the Court of Appeals' remedy, by failing to fully account for the legislative purposes of Section 42–10–9, has the potential of being overly broad and eroding the protection for homeowners established by the Legislature.

■ {10} Nonetheless, we understand the frustration of the Court of Appeals and the district court with respect to Wakeland's actions. Wakeland's conduct was unjustified and malicious. To allow her to benefit from these actions would, in our view, transform the homestead exemption from a necessary source of protection, as the Legislature intended, to an instrument for destruction and harm. This complete distortion of the Legislature's purpose demands a judicial response. We therefore agree with the lower courts that the facts of this case warrant judicial intervention, but the source of authority for our action does not lie solely in our inherent equitable power; we believe that the exercise of our equitable power is necessary to ensure that the legislative intent of Section 42–10–9 is not frustrated. *See Cox v. Waudby,* 433 N.W.2d 716, 719 (Iowa 1988) ("Although exemption statutes are to be liberally construed in favor of the debtor, our construction must not extend the debtor privileges not intended by the legislature."). We must therefore be cautious to limit our response in a manner that respects the public policy established by the Legislature. *See Torres v. State,* 119 N.M. 609, 612, 894 P.2d 386, 389 (1995) ("[I]t is the particular domain of the legislature, as the voice of the people, to make public poli-

cy."). In particular, we highlight the Court of Appeals' undefined concern about the vulnerability of creditors in New Mexico as an insufficient basis, standing alone, upon which to exercise our equitable powers in light of express statutory language to the contrary; it is not the role of the judiciary to second guess the policy choices made by the Legislature. *See Havoco of Am., Ltd. v. Hill*, 790 So.2d 1018, 1022 n. 8 (Fla.2001) ("[T]he use of the homestead exemption to shield assets from the claims of creditors is not conduct sufficient in and of itself to forfeit the exemption...."). We will invoke our equitable powers when it is necessary to effectuate the intent of the Legislature, not to defeat that intent. *See Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal.4th 116, 96 Cal.Rptr.2d 485, 999 P.2d 718, 728 n. 14 (2000) ("The court's inherent equitable power may not be exercised in a manner inconsistent with the legislative intent underlying a statute....").

{11} Other jurisdictions have observed that, as a general matter, constitutional and statutory homestead exemptions are not absolute. *See* 2 Richard R. Powell, *Powell on Real Property* § 1803[6], at 18–96 (rel.74, 1996); *Partridge v. Partridge*, 790 So.2d 1280, 1283 (Fla.Dist.Ct.App.2001) ("The constitutional exemption on homestead property is not absolute. As such, the homestead can be the subject of an equitable lien and foreclosure by a forced sale in an appropriate case."). Some courts have, for example, permitted an equitable lien on a homestead exemption for delinquent child support payments, reasoning that such debts are beyond the intended reach of the exemption. *See Jensen v. Jensen (In re Application of Jensen)*, 414 N.W.2d 742, 745–46 (Minn.Ct.App. 1987) ("The basis of the exemption is to protect the family homestead from creditors. The spouse and any children are not outside creditors, but *are* the family. The exemption cannot be used to harm the ones it is designed to protect.") (citation omitted); *Gunn v. Gunn*, 505 N.W.2d 772, 775 (S.D.1993) ("A divorce court, being a court of equity, possesses the power to impose a lien upon a homestead for purposes of spousal or child support."). Other courts have held that a homestead exemption is subject to an equitable lien "where funds obtained through fraud

or egregious conduct were used to invest in, purchase, or improve the homestead." *Havoco*, 790 So.2d at 1028; *accord Maki v. Chong*, 119 Nev. 390, 75 P.3d 376, 379 & n. 9 (2003) (per curiam) (citing cases from other jurisdictions). *See generally* 2 Powell, *supra*, § 18.03[6][g], at 18–104 (rel.81, 1997). These decisions protect the statutory or constitutional purposes of the exemption by preventing its use "as a sword to protect a theft." *Webster v. Rodrick*, 64 Wash.2d 814, 394 P.2d 689, 691 (1964).

■ {12} In this case, Wakeland's tortious and malicious conduct involved the very property for which she seeks her exemption. With knowledge of the foreclosure, Wakeland caused significant damage to the property for the sole purpose of sabotaging the Mannicks' lawful interests. *Cf. Butterworth v. Caggiano*, 605 So.2d 56, 60 n. 5 (Fla.1992) (discussing "situations where an equitable lien was necessary to secure to an owner the benefit of his or her interest in the property"). This conduct is thus distinguishable from the tortious conduct underlying the judgment lien and foreclosure and from other conduct that might support a collateral judgment, such as the one in *Laughlin*, for which garnishment of the exemption for the judgment creditor is explicitly precluded by statute. Unlike the underlying judgment lien, which is a debt against which the homestead exemption is designed to provide protection in order to prevent families from becoming destitute, the judgment in the waste action, somewhat like delinquent child support payments and fraud proceeds used to purchase the homestead, is not the type of debt the Legislature intended to shield. *Cf. Maki*, 75 P.3d at 379 (observing that "a parent who owed child support arrearages ... was 'not the type of debtor whom the legislature sought to protect' ") (quoting *Breedlove v. Breedlove*, 100 Nev. 606, 691 P.2d 426, 428 (1984)). When malicious, fraudulent, or intentional tortious conduct involves the homestead itself, we believe that the Legislature did not intend for the debtor to gain from this conduct by receiving the exemption; under these limited circumstances, we believe that courts have the power to impose an equitable lien against the homestead exemption. *See Havoco*, 790

So.2d at 1022 n. 8 ("[T]he homestead protection should not be used to shield fraud or reprehensible conduct."); *Maki*, 75 P.3d at 377 ("Although public policy favors homestead exemptions in all but a few situations, we cannot allow a debtor to be shielded by the homestead exemption to further a fraud or similar tortious conduct.").

{13} The Legislature did not create the homestead exemption with the intent that it be used to facilitate intentional or malicious tortious conduct. *See Burrows v. Burrows*, 886 P.2d 984, 991 (Okla.1994) ("The homestead exemption is intended to be a shield, not a sword."). Otherwise, a debtor could virtually destroy all of the subject property in excess of the value of the exemption, even beyond Wakeland's partial destruction of the property in this case, and still receive the exemption. The Legislature could not have intended such an absurd result. Conduct of this nature indicates an intent on the part of the debtor to abandon the homestead exemption. We emphasize, however, that the conduct of the debtor must be egregious or fraudulent and must involve the homestead itself. Under the circumstances of this case, it is also critical that Wakeland's destructive actions occurred after she knew of the foreclosure. We believe that these requirements ensure that the judicial remedy of an equitable lien is narrowly designed to protect the goals and public policy established by the Legislature in the homestead exemption statute. We conclude that Wakeland's conduct of maliciously causing extensive damage to the homestead property and fraudulently attempting to encumber the water rights of the property with knowledge of the foreclosure meets these criteria. Though this equitable remedy is necessary in the present case, we anticipate that it will be required only in rare circumstances.

### III. Conclusion

{14} The Court of Appeals' equitable remedy lacks sufficient limitations to protect the purposes of Section 42–10–9. However, we hold that, under the circumstances of this case, the district court has the authority to impose an equitable lien against Wakeland's homestead exemption. The effect of the lien is that the homestead exemption is subject to enforcement of the judgment in the waste action. *Cf. Maki*, 75 P.3d at 378 ("Under the doctrine of equitable liens, [the debtor's] homestead exemption does not extend to process of the court regarding enforcement of [the] default judgment."). We remand for further proceedings consistent with this opinion.

{15} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PETRA JIMENEZ MAES, and EDWARD L. CHÁVEZ, Justices.