OPINION WECHSLER, Judge. {1} This case involves the issue of whether a non-parent has standing to assert a custody and/or visitation claim, absent a finding of unfitness of the natural or adoptive parent, under New Mexico statutory or case law. Petitioner Bani Chatterjee appeals the district court’s dismissal of her petition to establish parentage and determine custody and time sharing with regard to the adopted child of her former partner, Respondent Taya King, as well as the denial of her motion to reconsider. We hold that NMSA 1978, Section 40-4-9.1(K) (1999) limits standing in a custody case to natural and adoptive parents and, as a result, denies Petitioner standing to bring her custody claim. We further hold that Section 40-ll-5(A) of the Uniform Parentage Act (the UPA), NMSA 1978, §§ 40-11-1 to -23 (1986, as amended through 2004) (repealed and recompiled at NMSA 1978, Sections 40-11A-101 to -903 (2009)) — presuming that a father is the natural father under certain circumstances — does not apply to women and, therefore, does not establish natural parenthood in Petitioner sufficient to grant her standing. We additionally hold, however, that the equitable power of the courts mandates a consideration of the best interests of the child. As such, if the allegations in the petition are proven, the best interests of the child may accord Petitioner standing to assert her visitation claim. Therefore, we affirm in part and reverse in part, and we remand to the district court to consider the allegations in the petition and the best interests of the child and to determine whether Petitioner has standing to seek visitation with the child. BACKGROUND {2} Petitioner and Respondent were in a committed relationship for several years when they traveled to Russia to adopt the child. Although Petitioner accompanied Respondent to Russia, she did not adopt the child at that time or in the time since they returned. After several years together, Petitioner and Respondent ended their relationship, and Respondent moved out with the child. Respondent initially allowed Petitioner to visit with the child but, after time, reduced the frequency of visits and ultimately terminated them. Shortly thereafter, Respondent moved with the child to Colorado. {3} Petitioner then filed a petition to establish parentage and determine custody and time sharing with regard to the child. Petitioner alleged that she, Respondent, and the child had lived as a family and that, with Respondent’s consent, both she and Respondent raised the child and held themselves out as parents. Petitioner further alleged that she had provided financial and emotional support for the child, had cared for the child on a daily basis, and had formed a parental relationship with the child. Respondent filed a motion to dismiss the petition, arguing that (1) pursuant to Rule 1 — 012(B)(6) NMRA, Petitioner is unable to state a claim for relief under the UPA because she is neither the biological nor adoptive parent of the child, and (2) pursuant to Section 40-4-9.1(K), Petitioner, as a third party seeking custody and visitation, is prohibited from gaining rights absent a showing of unfitness of the adoptive parent. The district court ruled that Section 40-4-9.KK) does not grant standing to Petitioner because it requires a finding of unfitness and the petition alleges that both parents are fit. The court further stated that the UPA does not apply because it “read the [UPA] as applying between a child and its natural and adoptive parents only, of which the petitioner is neither.” The district court therefore granted Respondent’s motion to dismiss, concluding that the petition failed to state a claim upon which relief can be granted. Petitioner filed a motion to reconsider, which the district court denied. SUMMARY OF THE ISSUES {4} This case deals broadly with standing. There is a difference in cases addressing standing between an action for custody and one for visitation. As this Court discussed in Rhinehart v. Nowlin, “it is clear that the [Legislature did not equate custody and visitation rights.” 111 N.M. 319, 324, 805 P.2d 88, 93 (Ct.App.1990). We therefore respond to Petitioner’s claims for custody and visitation separately. In order to evaluate Petitioner’s standing case, we first consider statutory construction and legislative intent, and then we analyze existing New Mexico case law. {5} The central issue is the application of Section 40-4-9.1(K). Therefore, we first evaluate the plain language and legislative intent of the custody statute and the related definitions in Section 40-4-9.1(K), (L) to determine whether the Legislature has expressly limited custody actions to adoptive and natural parents, absent a finding of unfitness of the natural or adoptive parent. Within that context, we analyze Petitioner’s argument that she has standing under Section 40-4-9.1(K) because of the definition of “parent” in Section 40-4-9.1(L)(5). We then analyze our Supreme Court’s expansion of Section 4(M-9.1(K) to allow for standing in cases in which extraordinary circumstances are present to determine whether it applies to Petitioner. {6} We next consider Petitioner’s arguments under the UPA. We first consider whether Section 40 — 11—5(A)(4), the “holding out” provision with regard to paternity, should be gender neutral and therefore grant Petitioner standing for her custody claim as the child’s natural mother. We then evaluate Sections 40-11-7 and 40-11-21 to determine whether they are sufficient to grant Petitioner standing for custody as the child’s natural mother. {7} After determining that New Mexico statutory law does not grant Petitioner standing to bring her custody claim, we discuss existing case law regarding custody for a non-parent. We address Petitioner’s claim that the courts have plenary equitable power and that the best interests of the child should override any statutory limit to standing for a custody case in Section 40-4-9.1(K). We then address the effect of cases that appear to acknowledge standing for a person in Petitioner’s situation. {8} Finally, we address Petitioner’s claim for visitation and the courts’ equitable powers in situations not expressly limited by the Legislature. We discuss the allegations in Petitioner’s petition to determine whether the district court’s consideration of the best interests of the child might warrant granting standing to Petitioner. We also address Respondent’s assertion that Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), limits a non-parent’s claim for standing with respect to custody and visitation. STANDING {9} Petitioner argues that the district court erred in dismissing her petition for failure to state a claim because, “under numerous sources of law, [Petitioner] has parental standing to seek custody of, and visitation with, [the child].” “When a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action.” Am. Civil Liberties Union of N.M. v. City of Albuquerque, 2008-NMSC-045, ¶ 9 n. 1, 144 N.M. 471, 188 P.3d 1222 (internal quotation marks and citation omitted). We review de novo whether a party has standing to bring a claim. Vescio v. Wolf, 2009-NMCA-129, ¶ 8, 147 N.M. 374, 223 P.3d 371. We also review “[a] district court’s decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) ... de novo.” N.M. Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co., 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342 (internal quotation marks and citation omitted). In addressing Rule 1-012(B)(6) claims, we accept as true all well-pleaded facts and resolve any doubt in favor of the complaint’s sufficiency. N.M. Pub. Sch. Ins. Auth, 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342; see also Vescio, 2009-NMCA-129, ¶ 8, 147 N.M. 374, 223 P.3d 371 (stating the same with regard to standing). We uphold orders to dismiss for failure to state a claim only when it appears that the plaintiff cannot recover or obtain relief under any set of facts provable under the complaint. N.M. Pub. Sch. Ins. Auth, 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342. Section 40-4-9.KK) {10} Section 40-4-9.1(K) states, “[w]hen any person other than a natural or adoptive parent seeks custody of a child, no such person shall be awarded custody absent a showing of unfitness of the natural or adoptive parent.” When interpreting legislative intent, we first look to the plain language of a statute and give words their ordinary meaning. Albuquerque Bernalillo County Water Util. Auth. v. N.M. Pub. Regulation Comm’n, 2010-NMSC-013, ¶52, 148 N.M. 21, 229 P.3d 494. We will not read language into a statute that is not there, particularly when it makes sense as written. Cobb v. State Canvassing Bd., 2006-NMSC-034, ¶ 34,140 N.M. 77,140 P.3d 498. {11} Subsection (K) is our Legislature’s codification of the oft-discussed parental preference doctrine. See Rhinehart, 111 N.M. at 324, 805 P.2d at 93 (stating that Sections 40-1-9.1(K), 40-4-7 to -9.1, and 40-9-1, when taken together, “reflect the [L]egislature’s intent to grant trial courts wide discretion in awarding either custody or visitation based on the best interests of the children, subject to [the] parental preference doctrine in custody matters” (emphasis omitted)); see also In re Guardianship of Ashleigk R., 2002-NMCA-103, ¶ 14, 132 N.M. 772, 55 P.3d 984 (“New Mexico has long recognized the parental preference doctrine, which holds that in a custody contest between a parent and a non[-]parent, the parent should generally prevail unless he or she is found unfit.”). The doctrine creates a presumption that the interests of minor children are best served in the custody of the natural parents and places the burden of proving the contrary onto the non-parent. See In re Guardianship of Ashleigh R., 2002-NMCA-103, ¶ 14, 132 N.M. 772, 55 P.3d 984. {12} The plain language of the statute is clear: “When any person other than a natural or adoptive parent seeks custody of a child, no such person shall be awarded custody absent a showing of unfitness of the natural or adoptive parent.” Section 40-4-9.1(K). Giving the words their ordinary meaning, Subsection (K) explicitly states that, unless there is a showing of unfitness of the natural or adoptive parent, only a natural or adoptive parent has standing to bring a claim for custody. Under Subsection (K), therefore, a third party — one other than the natural or adoptive parent' — would have standing to bring a custody claim, as long as there is a showing of unfitness of the natural or adoptive parent. The definitions section, Subsection (L), states who such a third party may be. A third type of parent could be that “person who is acting as a parent who has or shares legal custody of a child or who claims a right to have or share legal custody.” Section 40-4-9.1(L)(5) (emphasis added). In other words, a person “who claims a right to have or share legal custody” is a parent under Subsection (L)(5) and would have standing to bring a custody claim upon a showing of unfitness of the adoptive or natural parent under Subsection (K). {13} Petitioner argues that Section 40-4-9.1(K) does not bar her from seeking custody, even though there has been no finding of unfitness of the adoptive mother, Respondent. Specifically, Petitioner argues that, because Section 40-4-9.1(L)(5) defines “parent” to include a “person who is acting as a parent who has or shares legal custody of a child or who claims a right to have or share legal custody,” Petitioner is a “parent” under the statute, read as a whole. This argument would have us read a third type of parent into Subsection (K) — that “parent” as defined in Subsection (L)(5) is a “person who is acting as a parent who has or shares legal custody of a child or who claims a right to have or share legal custody.” However, we do not read language into a statute that is not there, Cobb, 2006-NMSC-034, ¶ 34, 140 N.M. 77, 140 P.3d 498, and the Legislature explicitly limited standing to natural and adoptive parents. Section 40-4-9.1(K). We are particularly hesitant to do so in this case, when the Legislature clearly contemplated other types of “parent” in Subsection (L), yet declined to include this third type of “parent” in Subsection (K). {14} Moreover, whenever possible, statutes must be read as a whole and in harmony with one another. State v. Smith, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022. As stated above, Section 40-4-9.1(K) would allow a person “who claims a right to have or share legal custody” — a “parent” under Subsection (L) — to have standing to bring a custody claim upon a showing of unfitness of the adoptive or natural parent. We cannot read the statute any other way without adding words that the Legislature did not see fit to add or rendering portions of Section 40-4-9.1 meaningless. See Int’l Ass’n of Firefighters v. City of Carlsbad, 2009-NMCA-097, ¶ 11, 147 N.M. 6, 216 P.3d 256 (“We seek to give meaning to all parts of the statute, such that no portion is rendered surplusage or meaningless.”), cert. denied, 2009-NMCERT-007, 147 N.M. 363, 223 P.3d 360. {15} Indeed, if we were to read Subsection (L) as Petitioner requests, granting a non-adoptive or non-natural parent standing to bring a custody claim, we would be rendering meaningless the Legislature’s limitation of standing to adoptive and natural parents. See § 40-4-9.1(K). We reiterate that the Legislature knows how to include language in a statute if it so desires. Cf. State v. Katrina G., 2007-NMCA-048, ¶ 17, 141 N.M. 501, 157 P.3d 66 (stating that, if the Legislature had wanted to draft a children’s code statute with the same expiration of jurisdiction as seen in the adult code, it could have done so). Instead, the Legislature chose to limit Subsection (K) to natural and adoptive parents, and we decline to expand the statute beyond that limitation. Cf. Rhinehart, 111 N.M. at 325, 805 P.2d at 94 (stating that in a custody dispute between a natural father and a stepmother that the court’s discretion in custody cases is limited by Subsection (K) in that there must be a showing of unfitness in the natural or adoptive parent “[bjefore the court can award any person other than a natural or adoptive parent custody of the children”). {16} Respondent argued at- oral argument before this Court that the dissolution of marriage statutes, NMSA 1978, §§ 40^4-1 to -20 (1901, as amended through 2008), do not apply to this ease because there was no marriage or dissolution thereof. We do not read Section 40-4-9.1 to apply only to proceedings between a husband and a wife. Although Chapter 40, Article 4 of the 1978 compilation of the New Mexico statutes is entitled “Dissolution of Marriage,” the Legislature did not limit the application of the entire chapter to proceedings between present or former married parties. First, the title assigned by the Compilation Commission does not limit the reach of a statute. See NMSA 1978, § 12-2A-13 (1997) (“Headings and titles may not be used in construing a statute or rule unless they are contained in the enrolled and engrossed bill or rule as adopted.”). Section 4ÍM-9.1 was originally adopted in 1981. As enrolled and engrossed, the bill stated that it was “relating to custody of minors; providing for joint custody under certain circumstances.” 1981 N.M. Laws, ch. 112. The bill amending Section 40-4-9.1 in 1986 stated that the bill was “relating to child custody; providing for [the] rights, obligations and procedures in joint custody determinations; repealing and enacting a section of the NMSA 1978.” 1986 N.M. Laws, ch. 41. {17} Moreover, the express language of portions of Chapter 40, Article 4 specifically contemplates proceedings between parties who are not and who have never been married. For instance, Section 40-4-9(A) applies to “any case in which a judgment or decree will be entered awarding the custody of a minor.” Section 40-4-11 applies to “any proceeding before a court in which the court has the duty or authority to determine liability of a parent for the support of minor children or the amount of that support.” Section 40-4-11.1(A) applies to “any action to establish or modify child support.” Each of these sections addresses the rights and obligations of “parents,” not “spouses,” regarding custody of their minor children and child support. See also NMSA 1978, § 40-AB-10 (1988) (requiring Child Support Hearing Officers to apply child support guidelines, as established by statute (Section 40-4-11.1), the Supreme Court, or the Secretary of Human Services). In contrast, other portions of Chapter 40, Article 4 expressly state that the section only applies to proceedings between a husband and wife. See, e.g., § 40-4-5 (defining the jurisdiction of a district court “to decree a dissolution of marriage”). {18} Section 40-4-9.1 similarly concerns the rights of parents to custody of their child. It defines the forms of custody and states the presumption for joint custody as being in the best interests of a child. Section 40-4-9.1(A), (L). It specifically defines a “parent” subject to its provisions as “a natural parent, adoptive parent or person who is acting as a parent who has or shares legal custody of a child or who claims a right to have or share legal custody.” Section 40-4-9.1(L)(5). It makes no mention of the need for an existing or prior spousal relationship for its application. {19} Our reading is supported by appellate decisions that have applied portions of Chapter 40, Article 4 to proceedings not involving a dissolution of marriage. For example, in In re Adoption of J.J.B., 119 N.M. at 652, 894 P.2d at 1008, our Supreme Court considered the “public policy” of New Mexico in custody matters as stated in Section 40-4-9.1(K) in discussing the custody rights to a child in an adoption proceeding between a natural parent and an adoptive parent that did not involve the dissolution of marriage. In Grant v. Cumiford, 2005-NMCA-058, ¶¶ 2, 13, 137 N.M. 485, 112 P.3d 1142, this Court applied the “presumption that joint custody is in the best interests of the child” found in Section 40-4-9.1(A) in a case involving parents who were “never married.” • We also applied various provisions of the statutory child support guidelines on “Imputation of Income” and “Abatement” of child support found in Section 40-4-11.1. Grant, 2005-NMCA-058, ¶¶ 22-32, 137 N.M. 485, 112 P.3d 1142. {20} There is one case that can be read inconsistently. In Vescio, 2009-NMCA-129, ¶ 12, 147 N.M. 374, 223 P.3d 371, this Court mentioned Section 40 — 4-9.1(K) in connection with an aunt’s custody petition. Relying on In re Guardianship Petition of Lupe C., 112 N.M. 116, 119, 812 P.2d 365, 368 (Ct.App. 1991), we stated that the section “authorizing the court to make an order for the guardianship of a child ... only applies in the context of marital dissolution.” Vescio, 2009-NMCA-129, ¶ 12, 147 N.M. 374, 223 P.3d 371. In re Guardianship Petition of Lupe C. involved Section 40 — 4-7(B) and (C), not Section 40 — 4-9.1. 112 N.M. at 119, 812 P.2d at 368. Section 40-4-7(B) and (C) only apply to dissolution of marriage cases. To the extent that Vescio can be read to limit the application of Section 40-4-9.1 to cases involving marital dissolution, we hold that it should not be so interpreted. See Grant, 2005-NMCA-058, ¶¶ 2, 13, 137 N.M. 485, 112 P.3d 1142 (noting that the presumption of Section 40 — 4-9.1(A) that joint custody is in the best interests of the child applied in a case in which parents were never married); cf. Normand ex rel. Normand v. Ray, 109 N.M. 403, 406-08, 785 P.2d 743, 746-48 (1990) (addressing Section 40 — 4-9(B) and (C) in a case involving a child custody dispute between the father and maternal grandparents in which there was no dissolution of marriage before the court). {21} Regardless, the argument that Section 40 — 4-9.1 does not apply if there is no marriage or dissolution of marriage before the court does not address the parental preference doctrine that underlies Section 40 — 4-9.1. Even if Section 40-4-9.1 were not to apply to custody issues between non-spouses, the parental preference doctrine would nevertheless apply. See In re Guardianship of Ashleigh R., 2002-NMCA-103, ¶ 14, 132 N.M. 772, 55 P.3d 984 (stating application of parental preference doctrine in custody contest between parent and non-parent). {22} Finally with respect to our analysis of Section 40-4-9.1(K), we note that the dissent observes that legislatures in other states have enacted statutes that specifically deal with the factual circumstances similar to this case and that our Legislature has not done so. Indeed, the New Mexico Legislature has not enacted such a statute. However, it is because the Legislature has not acted to grant Petitioner standing to seek custody that we reach our conclusion. Section 40-4-9.1 addresses standing of non-parents to seek custody of a child and limits it to circumstances in which there is a showing of parental unfitness. It is the Legislature’s responsibility to expand the requirements for standing if it wishes to do so. Expansion of Section 40-4-9.KK) — Extraordinary Circumstances {23} Our Supreme Court has recognized an expansion of the express language of Section 40-4-9.1(K) to allow for allegations of “extraordinary circumstances.” In re Adoption of J.J.B., 119 N.M. 638, 652, 894 P.2d 994, 1008 (1995) (stating that, despite the public policy in New Mexico as demonstrated by Section 40-4-9.1(K), when “[custody based upon the biological parent-child relationship [is] at odds with the best interests of the child[,] the best interests of the child must prevail” and that “[a] parent’s right is not absolute and under extraordinary circumstances, custody of a child may be awarded to a non[-]parent over the objections of a parent”). Petitioner argues in her reply brief, and made the assertion at oral argument, that extraordinary circumstances exist in this case. However, she made no such argument before the district court or in her brief in chief. See Rule 12-216(A) NMRA (“To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked, but formal exceptions are not required, nor is it necessary to file a motion for a new trial to preserve questions for review.”); State v. Foster, 1999-NMSC-007, ¶ 41, 126 N.M. 646, 974 P.2d 140 (stating that “issues not addressed in an appellant’s brief will be deemed abandoned”), abrogated on other grounds as recognized by Kersey v. Hatch, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. {24} Nonetheless, even if we were to accept Petitioner’s assertion that she “implicitly” argued extraordinary circumstances in her petition by stating that psychological harm would come to the child if Petitioner was not permitted to have a continuing relationship with the child, we are not persuaded that Petitioner’s allegation of psychological harm rises to the level of extraordinary circumstances contemplated by our Supreme Court in In re Adoption of J.J.B. Indeed, the Court in that case stated that “special facts and circumstances might be found that would provide an extraordinary reason for taking a child from its parent” and that these special circumstances seem to “be the anticipation of unique situations that are beyond the usual unfit-parent criteria and are not expressly covered by statute or case law.” 119 N.M. at 652, 894 P.2d at 1008 (internal quotation marks and citation omitted). Although the Court declined to enumerate specific facts and circumstances, the examples that it gave indicate that extraordinary circumstances are instances in which there have been no formal allegations of unfitness, but in which “the natural parent’s circumstances have so significantly changed as to render the parent unfit” or “the child’s contact with the biological parents has been so minimal that he or she has significantly bonded with [other] parents.” Id. at 652-53, 894 P.2d at 1008-09 (citing also to a New York case that indicates that an extraordinary circumstance could exist if removal of the child from the custody of a non-parent “is grave enough to threaten destruction of the child,” even if there has been no formal charge of abandonment or persisting neglect by the parent (internal quotation marks and citation omitted)). See also In re Guardianship of Ashleigh R., 2002-NMCA-103, ¶ 24, 132 N.M. 772, 55 P.3d 984 (“A lengthy separation between parent and child can be an exceptional circumstance justifying the denial of custody to an otherwise fit parent.”). The Court further stated that acknowledging an extraordinary circumstance amounts to an “involuntary disruption of the bond between parent and child” and that it is “met only with great difficulty, for evident reasons of humanity and policy.” Id. at 653, 894 P.2d at 1009 (internal quotation marks and citation omitted). Petitioner has not asserted that the relationship between Respondent and the child is so weak as to amount to unfitness, that there would be “destruction of the child” if Petitioner is not granted custody, or that there should be any disruption of the parent and child relationship between Respondent and the child. We therefore decline to further address Petitioner’s extraordinary circumstances argument. The UPA {25} Petitioner raises another argument under the UPA, arguing that the UPA presumes her to be the child’s parent, entitling her to standing to bring her custody claim. Petitioner relies upon Sections 40-11-5(A)(4) and 40-11-21 and asserts that the Legislature intended the “holding out provision” pertaining to paternity, Section 40-11-5(A)(4), to apply equally to women. We apply the 2008 version of the UPA because that is the statute that was in effect at the time of the proceedings below. {26} Section 40-ll-5(A)(4) states that “[a] man is presumed to be the natural father of a child if ... while the child is under the age of majority, he openly holds out the child as his natural child and has established a personal, financial or custodial relationship with the child.” Section 40-11-21 states, in pertinent part, “[i]nsofar as practicable, the provisions of the [UPA] applicable to the father and child relationship apply” to a mother and child relationship. Petitioner would have us read these statutes together to accord her standing because her allegations assert that she held out the child as her own and, as such, should be “presumed to be the natural [mother] of [the] child.” Section 40-ll-5(A). {27} Section 40-11-4 of the UPA states that the “parent and child relationship” can be established by (1) the natural mother by proof of her having given birth or as provided by Section 40-11-21, (2) the natural father as provided by the UPA, and (3) an adoptive parent under the Adoption Act. As stated above, whenever possible, statutes must be read as a whole and in harmony with one another. See Smith, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022. Moreover, we look first to the plain language of a statute and give words their ordinary meaning. Albuquerque Bernalillo County Water Util. Auth., 2010-NMSC-013, ¶ 52, 148 N.M. 21, 229 P.3d 494. Section 40-11^4 expressly provides for the methods by which a woman can assert her status as the natural mother— by proof of her having given birth or by some other proof of being a natural mother, as provided by Section 40-11-21. The methods by which a man can assert his status as a natural father are provided in Section 40-11-5. If we were to read Section 40-11-5 to apply to women, pursuant to Section 40-11-21, we would be rendering the portion of Section 40-11-4 ascribing the methods by which a woman may assert her status as a natural mother surplusage. See Int’l Ass’n of Firefighters, 2009-NMCA-097, ¶ 11, 147 N.M. 6, 216 P.3d 256 (“We seek to give meaning to all parts of the statute, such that no portion is rendered surplusage or meaningless.”). Therefore, we decline to read Section 40-ll-5(A)(4) in this impracticable way. See § 40-11-21 (stating that “[i]nsofar as practicable, the provisions of the [UPA] applicable to the father and child relationship apply” to a mother and child relationship). {28} Petitioner further argues that Sections 40-11-7 and 40-11-21 allow her, as an “interested party,” to bring an action to determine the existence of a mother and child or a parent and child relationship. Section 40-11-7 is titled “[determination of father and child relationship; who may bring action; when action may be brought.” Although the statute states that any interested party may bring an action to determine the existence of a parent and child relationship, Section 40-11-21 addresses the mother and child relationship, so we may fairly assume that Section 40-11-7 addresses the father and child relationship, as stated in its title. See State v. Lewis, 2008-NMCA-070, ¶ 19, 144 N.M. 156, 184 P.3d 1050 (indicating that the title of a statute may be used to determine legislative intent); see also § 12-2A-13 (stating that titles may be used in construing a statute if they are contained in the enrolled or engrossed bill). As to Section 40-11-21, to read the statutes harmoniously, we must limit Section 40-11-21 to its use, as referenced by Section 40-11-4. If we were to expand Section 40-11-21 to allow an interested party to assert the existence of a mother and child relationship with a woman who is not the biological or adoptive mother, we would be rendering Section 40-11-4 meaningless insofar as it establishes the parent and child relationship as used in the UPA as relating to a natural mother, natural father, or adoptive mother. See Int’l Ass’n of Firefighters, 2009-NMCA-097, ¶ 11, 147 N.M. 6, 216 P.3d 256 (stating that we do not read statutes to render portions of it meaningless); see also § 40-11-2 (defining the “parent and child relationship” as used in the UPA as “the legal relationship existing between a child and his natural or adoptive parents [and] includes the mother and child relationship and the father and child relationship” (emphasis added)). {29} Additionally, as stated above, Section 40-11-4 states that a parent and child relationship can be established between a child and a natural mother by proof of the mother having given birth to the child or by some other proof of natural motherhood, as provided for in Section 40-11-21, which allows an interested party to assert the existence of such a relationship. Section 40-11-4 does not, however, allow for a parent and child relationship between a child and a natural mother to be established by proof of some other kind of parent and child relationship— in other words, nothing in the statute indicates that the Legislature contemplated a parent and child relationship being established between a natural mother and a child with regard to anyone other than a natural mother. See Black’s Law Dictionary 1127 (9th ed. 2009) (referring to “birth mother” or “biological mother” under the definition of “natural mother”); id. at 1106 (defining “birth mother” within the definition of “mother” as “[t]he woman who carries an embryo during the gestational period and who delivers the child” and allowing for instances of artificial insemination, and defining “biological mother” as “[t]he woman who provides the egg that develops into an embryo”). We will not read additional meaning into a statute that is not there, particularly when it makes sense as written. See Cobb, 2006-NMSC-034, ¶ 34, 140 N.M. 77, 140 P.3d 498. Petitioner does not claim that she has given birth to or legally adopted the child. Therefore, she has not established standing under Section 40-11-21 by which she may establish a parent and child relationship as that relationship is used in the UPA. Equity and Common Law {30} We next address Petitioner’s arguments that New Mexico case law gives her standing based on AC. v. C.B., 113 N.M. 581, 829 P.2d 660 (Ct.App.1992), and Barnae v. Barnae, 1997-NMCA-077, 123 N.M. 583, 943 P.2d 1036, and that Subsection (K) “does not take into account the reality of psychological parentage and certainly does not trump the courts’ plenary equitable powers.” Petitioner alleges that she is “the equitable parent” of the child and that her parental right should be recognized under an equitable parent or de facto parent theory to maintain the stability of her parent-child relationship with the child. We first discuss AC. and Bamae, which, although informative, are not entirely analogous to the issue before us. {31} A.C. involved an oral agreement between a biological mother and her partner, the petitioner, entered before the birth of the mother’s child, to raise the child as co-parents. 113 N.M. at 582, 829 P.2d at 661. The petitioner claimed that she participated in the rearing of the child, including sharing in the financial responsibility, for several years. Id. After the parties separated, the petitioner filed an action, seeking joint legal custody and time sharing. Id. AC. dealt primarily with the petitioner’s allegations that the biological mother committed fraud, inducing the petitioner to dismiss the petition. However, this Court briefly addressed the district court’s finding that “no valid legal marriage existed between the parties, there was no adoption of the child by [the petitioner, and thus, [the pjetitioner had no standing or enforceable rights.” Id. at 583, 829 P.2d at 662. We declined to “issue an advisory opinion, particularly without the benefit of the district court’s findings of fact and conclusions of law,” but stated that someone “in [the petitioner’s shoes may be able to establish deprivation of a legally recognized right to maintain some type of continuing relationship with the child.” Id. at 586, 829 P.2d at 665. We therefore stated that the petitioner had “made a colorable claim of standing to seek enforcement of such claimed rights.” Id. However, A.C. did not consider Section 40-4-9.1. See State v. Gamlen, 2009-NMCA-073, ¶ 15, 146 N.M. 668, 213 P.3d 818 (“It is well established that cases are not authority for propositions not considered.” (internal quotation marks and citation omitted)). We decline to rely on a statement based on a hypothetical situation, which did not consider the relevant statute in our case, to override the Legislature’s stated public policy. See Coppler & Mannick, P.C. v. Wakeland, 2005-NMSC-022, ¶ 8, 138 N.M. 108, 117 P.3d 914 (stating that “[t]he general equitable power of the district court cannot overcome the public policy established by the Legislature”). {32} Similarly, Bamae addressed a dispute between a biological mother and her partner, the petitioner. 1997-NMCA-077, ¶ 2, 123 N.M. 583, 943 P.2d 1036. Again, in that case, the petitioner did not legally adopt the children, and, after the parties ended their relationship, the petitioner filed a petition for custody and time sharing. Id. ¶¶ 2, 6. The primary issue was whether New Mexico or California had jurisdiction, but, in dealing with the jurisdiction question, we stated our view of New Mexico case law on the question of whether the petitioner had standing to state a claim. Id. ¶ 10. Citing AC., we reiterated that “a person in a situation similar to [the petitioner’s made a color-able claim of standing to assert a legal right to some type of continuing relationship with a child.” Barnae, 1997-NMCA-077, ¶ 10, 123 N.M. 583, 943 P.2d 1036. We observed that, “[ejven though the standard factors used to determine forum non conveniens ... weigh in California’s favor, that analysis is obviated by the fact that the California courts would dismiss this ease if New Mexico were to relinquish jurisdiction,” noting that California courts do not grant standing to individuals in the petitioner’s position. Id. ¶21. However, again, this Court did not consider Section 40-4-9.1 in Bamae, and we will not rely on Bamae for a proposition overriding the Legislature’s explicitly stated limitation in Section 40-4-9.1. See Coppler & Mannick, P.C., 2005-NMSC-022, ¶ 8, 138 N.M. 108, 117 P.3d 914 (“The general equitable power of the district court cannot overcome the public policy established by the Legislature!}]”); Gamlen, 2009-NMCA-073, ¶ 15, 146 N.M. 668, 213 P.3d 818 (“[C]ases are not authority for propositions not considered.” (internal quotation marks and citation omitted)). {33} Nor do the plenary equitable powers of the courts provide standing in this case. The district court exercises comprehensive equitable powers when dealing with cases involving children. Sanders v. Rosenberg, 1997-NMSC-002, ¶ 10, 122 N.M. 692, 930 P.2d 1144 (filed 1996). However, these equitable powers are not without limitation. See id. “It is a basic maxim that equity is ancillary, not antagonistic, to the law.” Coppler & Mannick, P.C., 2005-NMSC-022, ¶ 8, 138 N.M. 108, 117 P.3d 914 (internal quotation marks and citation omitted). The equitable powers of the courts cannot overcome the Legislature’s established public policy, and courts may not act in equity when doing so would violate an express provision of a statute. Id.; see also State ex rel. Miera v. Chavez, 70 N.M. 289, 291, 373 P.2d 533, 534 (1962) (“The courts will not add to such a statutory enactment, by judicial decision, words which were omitted by the [Legislature.”). The Legislature has acted and has enacted in Section 40-4-9.1(K) the standards for standing to seek custody of a child. The Legislature’s action does not leave room for us to invoke the courts’ inherent equitable authority to alter the legislative standards. Indeed, the courts’ inherent equitable powers are “usually exercised when there is no other parent or individual to act for the child.” In re Guardianship Petition of Lupe C., 112 N.M. at 119, 812 P.2d at 368. Absent a finding of unfitness of the adoptive or natural parent as required by Section 40-4-9.1(E), a non-parent does not have standing for a custody claim because the equitable powers of the courts do not trump the public policy established by the Legislature in Section 40-4-9.1(E). Coppler & Mannick, P.C., 2005-NMSC-022, ¶ 8, 138 N.M. 108, 117 P.3d 914. Visitation and the Best Interests of the Child {34} Petitioner’s arguments for visitation were included with her arguments as to custody. The Legislature has not limited standing for visitation in the same way that it has with custody in Section 40-4-9.1(E). Indeed, as expressed in Rhinehart with regard to step-parent visitation, the requirement that a non-parent show unfitness of a natural or adoptive parent before the court can consider the non-parent for custody “is not relevant to a determination of visitation.” 111 N.M. at 325, 805 P.2d at 94 (citing Section 40-9-1 with regard to grandparent visitation). In Rhinehart, this Court relied on the courts’ equitable powers and declined to accept the “father’s argument that the [Legislature's failure to permit statutorily the granting of visitation rights to stepparents necessarily prohibited the trial court from exercising jurisdiction for that purpose in [that] appeal.” Id.; see also Sims v. Sims, 1996-NMSC-078, ¶ 29, 122 N.M. 618, 930 P.2d 153 (stating that “the presumption is that the [Legislature, in enacting statutes, does not intend to overturn long-established equitable powers beyond what it declares with irresistible clearness by either express declaration or necessary implication” and clarifying that a statute that does not expressly limit a body of law will not be construed as restricting the courts’ equitable powers (internal quotation marks and citation omitted)). As stated above, the courts have “wide discretion in awarding ... visitation based on the best interests of the children.” Rhinehart, 111 N.M. at 324, 805 P.2d at 93. {35} When reviewing a Rule 1-012(B)(6) dismissal, we accept well-pleaded facts as true. N.M. Pub. Sch. Ins. Auth., 2008-NMSC-067, ¶ 11, 145 N.M. 316, 198 P.3d 342. Although many of the facts and conclusions in the petition are disputed, doubts should be resolved in favor of the sufficiency of the complaint. Id. The petition alleges that (1) Respondent adopted the child when she was thirteen months old; (2) Petitioner did not adopt the child through the Russian agency due to prejudice in Russia toward same-sex parents and race; (3) the parties raised the child together, sharing physical custody of the child for over nine years, have “fully participated in parenting her,” and “have held and continue to hold themselves out as parents of the child”; (4) the parties are “fit and proper parents”; (5) Petitioner has provided for the “physical, emotional, and social needs of the child”; and (6) “Petitioner and the ... child mutually acknowledge a relationship as parent and child.” These facts, if proven, assert a color-able claim for standing for visitation, and the district court erred in relying on Section 40-4-9.1(K) to deny Petitioner standing for visitation. We express no opinion as to whether the court should grant standing to Petitioner or whether the disputes should be resolved in favor of Petitioner if standing is granted. We merely hold that the district court is not restricted by Section 40-4-9.1(K) in considering visitation and, instead, can and should use its equitable powers to consider the facts stated in the petition and determine whether Petitioner should be granted standing for her visitation claim. See Rhinehart, 111 N.M. at 325, 805 P.2d at 94 (stating that courts have “inherent powers to act in the best interests of the children” and that the “best interests are the paramount consideration for the court in custody cases”). {36} Respondent argues that, in Troxel, the United States Supreme Court established that, “[a]bsent allegations that [Respondent] is unfit, state interference with her decisions regarding the care, custody and control of her child is unconstitutional and in derogation of the rights of [Respondent].” 530 U.S. at 70, 120 S.Ct. 2054. We are not persuaded that Troxel limits standing for visitation as broadly as Respondent desires. In Troxel, the Court did state that the Due Process Clause of the Fourteenth Amendment to the United States Constitution “protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.” Id. at 66, 120 S.Ct. 2054. However, the Court was careful to hold that the statute at issue in that case, Wash. Rev. Code. § 26.10.160(3) (2004), unconstitutionally infringed on the fundamental right “as applied to [the respondent] in [that] case.” Troxel, 530 U.S. at 67, 120 S.Ct. 2054 (emphasis added). Indeed, although the Court reiterated that “there is a presumption that fit parents act in the best interests of their children,” id. at 68,120 S.Ct. 2054, it declined to “consider the primary constitutional question passed on by the Washington Supreme Court — whether the Due Process Clause requires all non[-]parental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation.” Id. at 73, 120 S.Ct. 2054. Instead, the United States Supreme Court held that the application of the statute to the respondent and her family violated her due process right because the Washington Superior Court’s reasons for awarding visitation to the petitioner demonstrated that it “failed to accord the determination of [the respondent], a fit custodial parent, any material weight” and, instead, involved “nothing more than a simple disagreement between the Washington Superior Court and [the respondent] concerning her children’s best interests.” Id. at 72, 75, 120 S.Ct. 2054. In other words, Troxel does not stand for the proposition that a non-parent could never be awarded visitation absent a finding of unfitness of the custodial parent. Rather, as it expressly stated, it merely held that the statute, as applied to the respondent in that case, violated the respondent’s due process rights. Id. at 75,120 S.Ct. 2054. {37} In the present case, we do not see a similar violation of Respondent’s due process rights. Cf. Deem v. Lobato, 2004-NMCA-102, ¶¶ 17, 21, 136 N.M. 266, 96 P.3d 1186 (declining to strike down New Mexico’s Grandparent’s Visitation Act as facially unconstitutional in light of Troxel and stating that “[t]here is nothing in Troxel or the resulting case law to suggest that the Supreme Court considered the presumption that a fit parent acts in the best interests of his or her child to be other than a rebuttable presumption”); see also Williams v. Williams, 2002-NMCA-074, ¶ 23, 132 N.M. 445, 50 P.3d 194 (stating that “Troxel may have altered, but it did not eradicate, the kind of balancing process that normally occurs in visitation decisions”). Rhinehart, and even A.C. and Bamae, do not indicate a sweeping allowance for visitation rights awarded to a non-parent based solely on a district court’s opinion of the best interests of the child, regardless of a custodial parent’s own determination. Instead, those cases and our holding today merely allow a non-parent who has established a prima facie case for a parent and child relationship to assert a claim for visitation. See Rhinehart, 111 N.M. at 325, 805 P.2d at 94 (stating that the district court should use its discretion to grant visitation rights to a non-parent when “visitation is in the best interests and welfare of the children”); see also Barnae, 1997-NMCA-077, ¶ 10, 123 N.M. 583, 943 P.2d 1036 (stating that “a person in a situation similar to [the petitioner's made a colorable claim of standing to assert a legal right to some type of continuing relationship with a child”); A.C., 113 N.M. at 586, 829 P.2d at 665 (stating that someone “in [the petitioner’s shoes may be able to establish deprivation of a legally recognized right to maintain some type of continuing relationship with the child”). {38} It is still for the district court to determine whether Petitioner’s assertions are to be believed and, if so, whether they are sufficient to warrant court-ordered visitation. Cf. In re Adoption of Francisco A., 116 N.M. 708, 713, 866 P.2d 1175, 1180 (Ct.App. 1993) (stating that “it may be in the child’s best interest to allow visitation by a step[-]parent who had not adopted the child following divorce from the child’s natural parent” and that “our [S]upreme [C]ourt has held that the district court sitting as a court of equity has inherent power concerning issues of custody of minors” (internal quotation marks and citation omitted)); see also In re Samantha D., 106 N.M. 184, 186, 740 P.2d 1168, 1170 (Ct.App.1987) (stating that parents do not have absolute rights in their children and that, instead, parental rights are secondary to the best interests and welfare of the children). However, the district court erred in dismissing Petitioner’s complaint for failure to state a claim on the grounds that Section 40-4-9.1(K) denied her standing for visitation. ATTORNEY FEES {39} Petitioner argues in her reply brief that she is entitled to reasonable attorney fees if she prevails. She makes this argument in response to a statement made in Respondent’s closing argument in her answer brief that she has been “forced ... to engage in expensive and protracted litigation.” Rule 12-213(C) NMRA states that the reply brief “shall reply only to arguments or authorities presented in the answer brief.” Respondent’s complaint that she has invested a significant amount of time and energy in this litigation is not an argument sufficient to allow Petitioner to raise an argument for attorney fees for the first time in her reply brief. See id. CONCLUSION {40} For the reasons stated in this opinion, we affirm in part and reverse in part and remand to the district court to determine whether Petitioner has standing for visitation based upon the best interests of the child. {41} IT IS SO ORDERED. I CONCUR: CELIA FOY CASTILLO, Judge. MICHAEL E. VIGIL, Judge (Dissenting).